# SUPREME COURT OF THE STATE OF NEW YORK
## *Appellate Division, Fourth Judicial Department*

730

KA 08-01434

PRESENT: SCUDDER, P.J., CENTRA, FAHEY, PERADOTTO, AND SCONIERS, JJ.

---

THE PEOPLE OF THE STATE OF NEW YORK, RESPONDENT,

V                                    MEMORANDUM AND ORDER

GABRIEL TAYLOR, DEFENDANT-APPELLANT.

---

DAVID J. PAJAK, ALDEN, FOR DEFENDANT-APPELLANT.

GABRIEL TAYLOR, DEFENDANT-APPELLANT PRO SE.

FRANK A. SEDITA, III, DISTRICT ATTORNEY, BUFFALO (ASHLEY RAE SMALL OF COUNSEL), FOR RESPONDENT.

---

Appeal from a judgment of the Supreme Court, Erie County (M. William Boller, A.J.), rendered May 23, 2008. The judgment convicted defendant, upon a jury verdict, of robbery in the first degree (two counts), attempted murder in the first degree (three counts), assault in the first degree and criminal possession of a weapon in the second degree.

It is hereby ORDERED that the judgment so appealed from is unanimously affirmed.

Memorandum: Defendant appeals from a judgment convicting him following a jury trial of, inter alia, two counts of robbery in the first degree (Penal Law § 160.15 [1], [2]) and three counts of attempted murder in the first degree (§§ 110.00, 125.27 [1] [a] [vii]; [b]). We reject defendant's contention that Supreme Court erred in refusing to suppress tangible evidence seized from his residence and any statements that he allegedly made during the search of that residence as the fruit of an unlawful search. In seeking suppression, defendant contended that police officers "illegally and improperly bypassed the requirement of obtaining a valid search warrant by masking the visit of the defendant's residence and search of his room as a parole visit." We conclude, however, that the search was "rationally and reasonably related to the performance of [the parole officer's] duty as a parole officer" (*People v Huntley*, 43 NY2d 175, 179; *see People v Nappi*, 83 AD3d 1592, 1593-1594, *lv denied* 17 NY3d 820; *People v Van Buren*, 198 AD2d 533, 534, *lv denied* 83 NY2d 811).

While investigating the robbery, police officers began to suspect that defendant, a parolee, was involved. At approximately 11:00 p.m. on the night of the robbery, the police officers contacted the parole officer whose duty it was to locate parolees, in order to obtain

defendant's most recent address.  The police officers did not inform the parole officer of their reason for needing that information.  After obtaining the requested information for the police officers, the parole officer informed the police officers that he was going to go to the residence "to verify if [defendant] was home" because defendant had a curfew of 10:00 p.m.  Inasmuch as it was the policy of the Division of Parole to have at least two officers present for any home visit made after 10:00 p.m., the parole officer asked the police officers if they would accompany him.  We thus conclude that the parole officer was "pursuing parole-related objectives" in going to defendant's residence (*People v Peterson*, 6 AD3d 363, 364, *lv denied* 3 NY3d 710; *see People v Vann*, 92 AD3d 702, 702-703, *lv denied* ___ NY3d ___ [May 4, 2012]; *People v Felder*, 272 AD2d 884, *lv denied* 95 NY2d 905; *People v Smith*, 234 AD2d 1002, *lv denied* 89 NY2d 988; *cf. People v Mackie*, 77 AD2d 778, 779).

When the parole officer and police officers arrived at defendant's residence, they were informed by a woman who identified herself as defendant's aunt that defendant was not home.  At that point it was apparent that defendant was in violation of his parole, and "the parole officer's conduct in searching the [residence] for a possible explanation of [defendant's] otherwise unexplained failure to [be present] was permissible" (*Huntley*, 43 NY2d at 182).  While the parole officer and police officers were present at the residence, a person who identified himself as defendant telephoned the residence and was overheard making certain statements.  Inasmuch as the search of the residence was lawful, there is no basis to suppress those statements.

We agree with defendant, however, that the court erred in admitting in evidence an inoperable handgun that was found during that search.  It is undisputed that the gun, which was seized from the living room couch upon which defendant slept, was not the same gun that was used in the robbery.  Although we concluded herein that the tangible evidence seized from defendant's residence, which evidence included the gun, was not subject to suppression as the fruit of an unlawful search, we nevertheless conclude that the gun was not admissible under any *Molineux* exception.  While the People contend that the gun was admissible to explain the statements made by defendant on the phone to his aunt, we reject that contention and conclude that the gun could not "logically be linked to [any] specific material issue in the case" (*People v Hudy*, 73 NY2d 40, 54).  We thus conclude that the probative force of that evidence did not outweigh its potential for prejudice (*see People v Pittman*, 49 AD3d 1166, 1167; *People v Carter*, 31 AD3d 1167, 1168; *see generally People v Ventimiglia*, 52 NY2d 350, 359-360).  We conclude, however, that the error is harmless.  The evidence of defendant's guilt is overwhelming, and "there [is] no significant probability that the jury would have acquitted [defendant] had the proscribed evidence not been introduced" (*People v Kello*, 96 NY2d 740, 744; *see People v Arafet*, 13 NY3d 460, 466-467; *see generally People v Crimmins*, 36 NY2d 230, 241-242).  Defendant was positively identified by an eyewitness to the incident.  Defendant and the eyewitness were acquaintances, and the eyewitness had conversed with defendant outside the convenience store just

minutes before the robbery.  Although the eyewitness was an "[e]x crack head" who had a criminal history, his version of events was corroborated by the surveillance video from the convenience store where the robbery occurred, and by three employees of the store and a security guard from a neighboring business.  In addition, defendant made numerous incriminating statements when he was ultimately arrested, one of which included details about the crime that only the perpetrator or an eyewitness to the crime could have known.  We further conclude that, based on the nature of the crimes and defendant's criminal history, the sentence is not unduly harsh or severe.

Defendant further contends in his pro se supplemental brief that the court erred in denying his CPL 330.30 motion to set aside the verdict.  We reject that contention.  Defendant based his motion in part on the fact that the court improperly permitted the jury to view a CPL 710.30 document that had not been admitted in evidence.  After learning of the error, the court alerted defense counsel to the issue, noting that "no harm" had resulted from the error because the contents of the document were duplicative of testimony offered during the course of the trial.  Defense counsel raised no objection to the manner in which the court handled the error, and thus the court had no authority to grant the motion to set aside the verdict based on a contention raised for the first time in the motion (*see* CPL 330.30 [1]; *People v Benton*, 78 AD3d 1545, 1546, *lv denied* 16 NY3d 828; *see generally People v Carter*, 63 NY2d 530, 536).  Finally, we reject defendant's contention that the court should have granted his CPL 330.30 motion insofar as it alleged that defense counsel was ineffective for failing to seek a mistrial based on the error relating to the CPL 710.30 document.  "It is well settled that defense counsel cannot be deemed ineffective for failing to 'make a motion or argument that has little or no chance of success' " (*People v Noguel*, 93 AD3d 1319, 1320, quoting *People v Stultz*, 2 NY3d 277, 287, *rearg denied* 3 NY3d 702).  We agree with the court that the jury's inadvertent viewing of the CPL 710.30 document was harmless inasmuch as it was duplicative of testimony admitted at trial and that, in any event, defendant failed to demonstrate the absence of strategic reasons for defense counsel's failure to move for a mistrial (*see People v Denis*, 91 AD3d 1301, 1302).

Entered:  July 6, 2012                    Frances E. Cafarell
                                          Clerk of the Court