■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v LEROY MACKIE, Appellant.—Judgment unanimously reversed, on the law and facts, motion to suppress granted in accordance with memorandum, and new trial granted. Memorandum: On appeal from a judgment on a jury verdict convicting him of four counts of rape in the first degree and one count of sodomy in the first degree, defendant's chief contention is that it was error to admit into evidence items seized during the warrantless search of his apartment by his parole officer and two police officers. The charges arise out of an incident in Auburn, New York, in the early morning of March 24, 1978 during which defendant allegedly entered the complainant's apartment at approximately 3:00 A.M. and, threatening to kill her and her two children, forced her to engage in several acts of sexual intercourse and oral sodomy. Later the same day, defendant's parole officer and two police officers searched defendant's apartment. At the pretrial hearing on defendant's motion to suppress the evidence seized during the search, defendant's parole officer, Mr. Szczech, testified that on March 24, 1978 while in the District Attorney's office on another matter he learned that a rape had occurred early that morning. He stated that he believed he might be of assistance because of his acquaintance with a number of parolees in the area and, accordingly, went to the police station. At approximately 1:00 P.M. he and Detective Cioffa proceeded to defendant's apartment but left when no one answered the door. At about 3:00 P.M. Mr. Szczech returned to defendant's apartment in a police car accompanied by Detective Cioffa and another police officer, Detective Quinn. Again, there was no answer, but in order to "see if Mr. Mackie was home, possibly to talk with him", Mr. Szczech persuaded defendant's landlady to let them in. The landlady testified that she remained in defendant's apartment during the search, that the three men opened drawers and closets and looked through the garbage, and that they remained in the apartment for about 20 minutes. Although he denied that he or Detective Cioffa or Officer Szczech opened any drawers, Detective Quinn conceded that they looked in the various rooms to see if defendant was there and that he found paper napkins and a washcloth on the kitchen floor which he retained. No evidence was adduced at the hearing connecting defendant with this crime or any other crime. Nor was there any testimony indicating that defendant had failed to report to his parole officer or to comply with any other condition of his parole or

suggesting that he had ever behaved violently toward his parole officer. At trial, the napkins and washcloth were admitted into evidence and a police chemist testified that one of the napkins was covered with the same type of blood as was found in the victim's apartment. We cannot accept the People's argument that the warrantless search was proper as one related to Officer Szczech's duty to detect and prevent parole violations (see *People v Huntley,* 43 NY2d 175, 181). On the contrary, we find from the evidence that the search was unmistakably a search by police officers to obtain evidence in furtherance of a criminal investigation and that Parole Officer Szczech was merely a "conduit" for doing what the police could not do otherwise *(People v Candelaria,* 63 AD2d 85, 90; see *People v Way,* 65 Misc 2d 865). Here the factor which prompted Mr. Szczech to offer his assistance to the police was knowledge that a rape had occurred. There was no suggestion that defendant was involved or that he was suspected of having violated his parole or having committed any other crime. The police officers accompanied Szczech to the apartment, participated in the search and seized the evidence. There is no satisfactory explanation for their presence if, as Mr. Szczech testified, the sole purpose for the visits to the apartment was to ascertain whether defendant was at home. Inasmuch as nothing in the minutes of the hearing indicates that the defendant was avoiding Mr. Szczech or was likely to be hiding in his apartment, there appears to be no reason why, when defendant did not answer the door at the time of the second visit, it was necessary to verify the obvious conclusion that the defendant was not home by entering the apartment and conducting a 20-minute search. Even were we to accept the People's characterization of the search as one conducted by a parole officer, we would reach the same result. The People, apparently relying on the standard authorization signed by defendant as parolee for searches of his person, residence, and property, adduced no evidence showing that the parole officer had any reason to suspect that the defendant had violated any condition of his parole. The authorization is not an unrestricted consent to any and all searches and does not obviate a showing by the parole officer that the search was rationally related to his duty to detect and prevent parole violations *(People v Huntley, supra,* pp 182-183). Accordingly, the motion to suppress the evidence seized in the search is granted and a new trial granted. Defendant also argues that the out-of-court identification should have been suppressed. While the lineup procedure contained some suggestive features, we find that under the "totality of the circumstances" *(Manson v Brathwaite,* 432 US 98; see *People v Graham,* 67 AD2d 172; *People v Gonzalez,* 61 AD2d 666, affd 46 NY2d 1011) the witness' identification was reliable. There is no merit to the other contentions raised on appeal. (Appeal from judgment of Cayuga County Court—rape, first degree, and other charges.) Present—Dillon, P. J., Simons, Hancock, Jr., Callahan and Witmer, JJ.