# SUPREME COURT OF THE STATE OF NEW YORK
## Appellate Division, Fourth Judicial Department

463

KA 08-01990

PRESENT: SCUDDER, P.J., FAHEY, LINDLEY, AND MARTOCHE, JJ.

---

THE PEOPLE OF THE STATE OF NEW YORK, RESPONDENT,

V                                          MEMORANDUM AND ORDER

JAMES D. JOHNSON, DEFENDANT-APPELLANT.

---

FRANK H. HISCOCK LEGAL AID SOCIETY, SYRACUSE (KRISTEN MCDERMOTT OF COUNSEL), FOR DEFENDANT-APPELLANT.

WILLIAM J. FITZPATRICK, DISTRICT ATTORNEY, SYRACUSE (SUSAN C. AZZARELLI OF COUNSEL), FOR RESPONDENT.

---

Appeal from a judgment of the Supreme Court, Onondaga County (John J. Brunetti, A.J.), rendered August 1, 2008. The judgment convicted defendant, upon his plea of guilty, of criminal possession of a controlled substance in the third degree.

It is hereby ORDERED that the judgment so appealed from is unanimously affirmed.

Memorandum: Defendant appeals from a judgment convicting him, upon his guilty plea, of criminal possession of a controlled substance in the third degree (Penal Law § 220.16 [12]). The conviction was based on defendant's possession of cocaine that was found by a parole officer in the center console of a motor vehicle driven by defendant shortly before the vehicle was searched. Defendant moved to suppress the cocaine, contending that the warrantless search was not supported by probable cause. In denying the motion, Supreme Court determined as a preliminary matter that, because defendant did not own the vehicle, he failed to establish that he had standing to contest the search of the vehicle. The court in any event concluded that the search was lawful because it was rationally and reasonably related to the performance of the duties of defendant's parole officer, and that defendant's status as a parolee was not exploited as a pretext for what would otherwise be an unlawful police-initiated search. Defendant thereafter entered a guilty plea, and on appeal he contends that the court erred in denying his suppression motion. We affirm.

On the evening in question, defendant's parole officer was working with a joint task force involving the Division of Parole, the Onondaga County Department of Probation, the Onondaga County Sheriff's Department, the Syracuse Police Department and the New York State Police. The joint task force, consisting of between 12 and 14 law enforcement officials, had a list of at least 15 parolees and

probationers to be searched, and defendant's name was on that list. As a condition of his parole, defendant had consented to searches of his residence, property and person. Defendant's parole officer testified at the suppression hearing that he included defendant on the list of parolees to be searched because, among other reasons, defendant had recently moved into a new apartment that had not yet been inspected by the parole officer.

Defendant's parole officer and a fellow parole officer arrived at defendant's apartment shortly before his 9:00 P.M. curfew, but defendant was not there. Defendant arrived minutes later in a motor vehicle he was operating, with no passengers. Upon parking in the lot next to his apartment, defendant exited the vehicle and locked the doors. He was then approached by the parole officers, who explained that they were there to inspect his residence. Defendant's parole officer notified the other members of the joint task force, who were waiting nearby and arrived momentarily. Upon entering his apartment with the officers, defendant placed the keys to the vehicle on a table before he was handcuffed for safety reasons. The officers proceeded to search the apartment, finding therein a digital scale and $839 but no contraband. While the apartment was being searched, one of the parole officers took the keys to the vehicle from the table and used them to open the vehicle, which he then searched. The parole officer found cocaine weighing more than one half of an ounce in the false bottom of a beverage container located in the center console, along with marihuana and $572 in cash.

We agree with defendant that the court erred in determining that he lacked standing to contest the legality of the search of the vehicle. Although "a defendant seeking to suppress evidence, on the basis that it was obtained by means of an illegal search, must allege standing to challenge the search and, *if the allegation is disputed*, must establish standing" (*People v Carter*, 86 NY2d 721, 722-723, *rearg denied* 86 NY2d 839 [emphasis added]), here at no time did the People contend that defendant lacked standing to challenge the search (*see People v Hunter*, 17 NY3d 725, 726). "Since the issue of defendant's standing was not raised, the court had no occasion to rule on that issue" (*id.* at 727). In any event, the evidence adduced at the hearing by the People established that defendant was the sole occupant of the vehicle, which he parked directly outside of his apartment in a private parking lot and then locked before he was approached by his parole officer. We conclude, based on that evidence, that defendant had "a possessory interest in, dominion and control over and the right to exclude others from the vehicle" sufficient to convey standing (*People v Banks*, 85 NY2d 558, 561, *cert denied* 516 US 868). Although there was no evidence that defendant owned the vehicle in question, it is well settled that a person may have a legitimate expectation of privacy in a vehicle that he or she does not own (*see generally id.* at 561-562).

We nevertheless agree with the court's further determination that the search of the vehicle was lawful. A parolee's "right to be free from unreasonable searches and seizures, guaranteed by [the] State Constitution[] . . ., remains inviolate" (*People ex rel. Piccarillo v*

*New York State Bd. of Parole*, 48 NY2d 76, 82). Nonetheless, "in any evaluation of the reasonableness of a particular search or seizure the fact of defendant's status as a parolee is always relevant and may be critical; what may be unreasonable with respect to an individual who is not on parole may be reasonable with respect to one who is" (*People v Huntley*, 43 NY2d 175, 181). Here, we conclude that the record supports the court's determination that the search was "rationally and reasonably related to the performance of the parole officer's duty" and was therefore lawful (*id.*). The fact that officers from other law enforcement agencies assisted in the search does not demonstrate that the parole officers in this case were used as "a 'conduit' for doing what the police could not do otherwise" (*People v Mackie*, 77 AD2d 778, 779). As noted, defendant's parole officer testified that he alone made the decision to include defendant on the list of parolees to be searched, and that he was motivated to do so by legitimate reasons related to defendant's status as a parolee. We note that we afford deference to the court's determination that the parole officer's testimony was credible (*see generally People v Prochilo*, 41 NY2d 759, 761), and that defendant was not singled out by law enforcement officials to be searched; instead, he was one of at least 15 parolees and probationers to be searched by the joint task force.

Although defendant's parole officer was aware that Syracuse police officers had received an anonymous tip that defendant was in possession of a handgun, that tip was received approximately two months before the search was conducted, and the court specifically determined that the tip "played no role" in the parole officer's decision to search the residence of defendant. Affording deference to the court as the factfinder, we cannot conclude that the court's determination in that regard was erroneous (*see generally id.*). We thus agree with the court that this was not a police search conducted in the guise of a parole search.

Entered: April 27, 2012                                    Frances E. Cafarell
                                                           Clerk of the Court