OPINION OF THE COURT
Thomas Rainbow Morse, J.
After indictment on two counts of felony drug possession, the defendant moved for suppression of cocaine and heroin seized from him and suppression of statements made to his parole officer. Resolution of those issues is made more complex due to the dearth of definitive appellate decisions regarding the constitutional benchmark for parolee searches in New York. In 2006, the United States Supreme Court found the Fourth Amendment was not offended by “suspicionless” searches of parolees. Yet, since that decision in Samson v California,[1] no New York appeals court has specifically addressed the effect of Samson on state parolee searches. For the reasons which follow, this court has evaluated the search of Mr. Bermudez pursuant to New York precedent, finds the search unconstitutional, and suppresses the physical evidence and statements obtained from him by parole officers.
Facts
A hearing on the propriety of the search of parolee Bermudez was held. No exhibits were introduced by the People and the proof consisted simply of the questioning of two parole officers. After considering the substance of their testimony, the tone and timber of their voices, observing aspects of their demeanor and appraising other nonverbal cues, the court finds the following facts based on the credible evidence presented.
On St. Patrick’s Day evening in 2014, four parole officers accompanied by a uniformed Rochester police officer went to the area of 81-89 Cleon Street in the City of Rochester. They all arrived sometime after 8:00 p.m. to conduct a home visit of a parolee other than Mr. Bermudez. Their presence was prompted by a report that someone had “shot at” the other parolee’s house *383 a few nights earlier. There is no proof before the court that Mr. Bermudez had any association with that house or that he and the other parolee were associates or even acquainted with each other. Importantly, the parole officers were not there to check on Mr. Bermudez who lived in another neighborhood. In fact, although Mr. Bermudez’s parole officer was present, he was there in a supporting role to assist in the unrelated home visit. When that officer first saw parolee Bermudez, the defendant was standing close to a car parked across the street from the home the four parole officers had come to inspect. At that point, Mr. Bermudez had less than four hours left under parole supervision. Nonetheless, his parole officer approached him, immediately placed him in handcuffs, pat searched him and then seized several packets of suspected narcotics found on Mr. Bermudez. After undertaking all those actions, the parole officer for the first time that evening engaged Mr. Bermudez in conversation.[2] Still, he apparently did not ask the parolee what he was doing in the area. Instead, he asked him why he had the drugs. He then turned the handcuffed Mr. Bermudez over to another parole officer who searched him prior to placing him in a vehicle. That search resulted in the discovery of additional narcotics.
The court further finds that before the above contact with Mr. Bermudez, his parole officer had never searched him on any of the officer’s eight prior contacts with the parolee. The court also finds that although Mr. Bermudez was just four hours from completion of his five years of parole supervision, this parole officer had been assigned to supervise him for less than three months. Lastly, based on the credible evidence, the court finds that given the time of initial contact between this parolee and his parole officer, Mr. Bermudez had sufficient time to make it home before his 9:00 p.m. curfew was to begin.
Parolee Searches under the Federal Constitution
The exclusionary rule precluding the prosecution from using tainted evidence derived from unconstitutional searches and *384 seizures applies to all state court prosecutions.[3] As noted by our highest state Court, the “rule was originally created to deter police unlawfulness by removing the incentive to disregard the law[;] [it] also serves to insure that the State itself, and not just its police officers, respect the constitutional rights of the accused.”[4] While it has been applied to the use of “tainted” evidence at parole revocation hearings in our state,[5] it is clear that an arrest itself is not a suppressible fruit.[6] Therefore, the only issue before the court is suppression of physical evidence and statements, not dismissal of the charges.
Accordingly, it becomes necessary for this court to consider the impact of Samson on the constitutionality of parolee searches in New York. In that 2006 case, the Supreme Court held that “the Fourth Amendment does not prohibit a police officer from conducting a suspicionless search of a parolee.”[7] At issue was a California statute which explicitly provided that every parolee in California is “subject to search or seizure by a parole officer or other peace officer at any time of the day or *385 night, with or without a search warrant and with or without cause.”[8] The Court noted specifically that it did not need to reach the issues of whether parolees consented to a waiver of their constitutional rights by acceptance of the search conditions or if the search conditions could be justified due to the “special needs” of parole supervision.[9] Instead, the Court based its decision on the reasonableness of the state statutory scheme regarding parolees.
Both the United States and New York Constitutions contain identical language regarding the protection against unreasonable searches and seizures.[10] Accordingly, our Court of Appeals has generally premised its rulings on both state and federal grounds. However, since “a State is free as a matter of its own law to impose greater restrictions on police activity” than required under “federal constitutional standards,”[11] the New York Court of Appeals “has demonstrated its willingness to adopt more protective standards under the State Constitution when doing so best promotes predictability and precision in judicial review of search and seizure cases and the protection of the individual rights of our citizens.”[12] In fact, the Supreme *386 Court in Samson specifically allowed for “some States and the Federal Government [to] require a level of individualized suspicion” in parolee search cases under statutes specifically related to the needs of those jurisdictions.[13] New York cases have developed such state specific standards.
*387 Parolee Searches in New York State
When it decided People v Huntley[14] in 1977, the New York Court of Appeals composed clear criteria by which parolee searches and seizures are to be measured. The Court held that
“whether the action was unreasonable and thus prohibited by constitutional proscription must turn on whether the conduct of the parole officer was rationally and reasonably related to the performance of the parole officer’s duty. It would not be enough necessarily that there was some rational connection; the particular conduct must also have been substantially related to the performance of duty in the particular circumstances.”[15]
This unambiguous standard grants New York parolees greater protection under the exclusionary rule than that afforded California parolees as outlined in Samson. It restricts and defines the more general regulatory release condition that allows parole officers to visit the parolee’s “residence and/or place of employment and [permits] the search and inspection of [the parolee’s] person, residence and property.”[16] Because of the special status of parolees in our community, the Huntley standard supplants the more general rules normally applicable to police/citizen street encounters.[17] While the Court in Huntley acknowledged the standard does not mean a parolee gives up the constitutional right to be free from “unreasonable searches *388 and seizures,”[18] it nonetheless found that “conduct which may be unreasonable with respect to a parolee if undertaken by a police officer may be reasonable if taken by the parolee’s own parole officer.”[19]
The special powers given an individual’s parole officer are based, in part, on the Huntley court’s conclusion that release from jail on parole is “a matter of legislative grace”[20] granted with the hope that with the assistance of the parole officer the parolee will successfully reintegrate into society without the need for further incarceration. Accordingly, the Huntley court noted that a supervising parole officer performs at least two necessary and “potentially inconsistent” functions. The officer
“has an obligation to detect and to prevent parole violations for the protection of the public from the commission of further crimes; he also has a responsibility to the parolee to prevent violations of parole and to assist him to a proper reintegration into his community. Thus, the parole officer’s responsibility to the parolee might be expected in some instances to warrant procedures which would not be reasonable if the officer were acting to discharge his obligation to the public only. Clearly he does not have a carte blanche, however, to intrude on the private life and affairs of the parolee.”[21]
Cases since Huntley, therefore, illustrate the need to balance those difficult disparate duties of a parole officer while preserving the officer’s “right to conduct searches rationally and substantially related to the performance of [the officer’s] duty.”[22]
Since 1977, situations in which a parolee search has been upheld have included those in which the officer had: a “parole *389 violation warrant” for the parolee;[23] discovered a parole violation “during a routine home visit”;[24] obtained a positive drug test during a parolee office visit;[25] noticed a parole violation during street contact with the parolee;[26] noted a curfew violation by the parolee;[27] become concerned because of “the suspicious nature of defendant’s statement” regarding an incident at the parolee’s residence;[28] received “information from law enforcement sources” that defendant might be engaged in activity in violation of parole conditions;[29] received information from a confidential informant;[30] or received information from an identified citizen.[31] There have been significantly fewer cases in which a court has found the parole officer’s search was “not reasonably and rationally related” to the officer’s duty as a supervising parole officer. The majority of those involve situations in which “the search was unmistakably a search by police officers to obtain evidence in furtherance of a criminal investigation and that [the] Parole Officer . . . was merely a conduit for doing what the police could not do otherwise.”[32] *390 Other courts have simply found that the search was unrelated to the defendant’s parole status.[33]
Neither Samson nor Huntley countenance “arbitrary, capricious or harassing searches”[34] of any citizen and the Supreme Court in Samson deferred to the discretion of the states regarding the issue of suspicionless searches of those paroled from prison. The clear consensus reached in our New York cases is that prior to contact with the parolee the parole officer must have, at the very least, an articulable and particularized concern substantially and rationally related to parole supervisory responsibilities to justify seizure and a search. On the record developed before this court, Mr. Bermudez’s parole officer failed to provide any justification whatsoever for walking up to Mr. Bermudez and placing him in handcuffs. Moreover, even if unexpressed “officer safety” due to the recent residential shooting and Mr. Bermudez’s prior record might somehow justify such action, once any threat was neutralized there was absolutely no justification related to parole supervision to search Mr. Bermudez without first inquiring as to whether he was headed home to make his curfew or ask what he was doing in the area.
The Oxford University Press defines “arbitrary” as “power or authority used without constraint” or action “based on random choice or personal whim.” Those words precisely describe the only conclusion this court can reasonably draw from the testimony regarding the actions taken against Mr. Bermudez who is not alleged to have violated his parole in any manner before being handcuffed and searched four hours prior to the expiration of his five-year period of parole supervision.
Conclusions
While sometimes viewed by prosecutors, police and the public as punitive, the exclusionary rule has undeniably educational aspects. When courts make it clear how and why a decision has been reached when presented with a controversy, not only the parties to that case but broader constituencies *391 impacted by the decision can comport themselves in harmony with the ruling.[35]
Accordingly, after due deliberation and careful consideration, it is hereby held that the record before this court demonstrates that the search of Mr. Bermudez was at best arbitrary and certainly unconstitutional pursuant to New York law. And it is further held that the record before this court at the hearing does not demonstrate that Mr. Bermudez’s supervising parole officer had any reason “rationally and substantially related to the performance of his duty” which justified the seizure and search of his parolee. And it is further held that the drugs recovered from the pockets of Mr. Bermudez were the immediate byproduct of a constitutionally unreasonable seizure. And it is further held that there is no attenuation between the unreasonable seizure of Mr. Bermudez and the discovery of drugs by parole officers or statements made by the parolee. And it is therefore ordered that the narcotics seized from the defendant by his supervising parole officer are hereby suppressed. And it is further ordered that the statements given by the defendant to his supervising parole officer are hereby suppressed. And it is further ordered that the narcotics seized from the defendant by the second parole officer are hereby suppressed.

. 547 US 843 (2006).

. This court is bound by the testimony offered at the hearing. Importantly, there is nothing in the record before this court indicating there was any conversation whatsoever between Parole Officer Jason and Mr. Bermudez before Bermudez was placed in handcuffs and searched.

. Mapp v Ohio, 367 US 643, 655-657 (1961) (physical evidence); Wong Sun v United States, 371 US 471, 485-486 (1963) (statements).

. People v Jones, 2 NY3d 235, 241 (2004) (internal quotation marks omitted).

. People ex rel. Piccarillo v New York State Bd. of Parole, 48 NY2d 76 (1979); compare Pennsylvania Bd. of Probation & Parole v Scott, 524 US 357 (1998) (under federal constitutional principles, the exclusionary rule does not apply to state parole violation hearings), with People ex rel. Victory v Travis, 288 AD2d 932, 933 (4th Dept 2001) (“the exclusionary rule applies to all stages of the parole revocation process, including a preliminary parole revocation hearing”), and People ex rel. Johnson v New York State Div. of Parole, 299 AD2d 832 (4th Dept 2002) (use of allegedly tainted evidence at a preliminary parole hearing). One court has observed that “[f]ederal and state courts are diametrically divided upon the issue of whether the exclusionary rule is available” in parole proceedings under the New York State Constitution since the Supreme Court decision in Scott. People ex rel. Gueits v Warden, George Motchan Detention Ctr., 38 Misc 3d 1217(A), 2013 NY Slip Op 50124(U), *4-5 (Sup Ct, Bronx County 2013).

. United States v Crews, 445 US 463, 474 (1980); People v Young, 55 NY2d 419, 426 (1982), cert denied 459 US 848 (1982). Thus, “any illegality in obtaining the presence of defendant at trial cannot deprive the People of the opportunity to prove his guilt through the introduction of evidence wholly untainted by the police misconduct.” People v Haymon, 277 AD2d 971, 972 (4th Dept 2000) (internal quotation marks omitted), lv denied 96 NY2d 800 (2001), cert denied 534 US 1026 (2001); see also People v Mackie, 133 AD2d 514, 515 (4th Dept 1987) (“Defendant is not himself a suppressible ‘fruit’ and the illegality of his detention cannot deprive the People of the opportunity to prove his guilt through the introduction of evidence wholly untainted by the police misconduct”).

. Samson v California, 547 US 843, 857 (2006).

. Samson v California, 547 US at 846.

. Samson v California, 547 US at 852-853 n 3. As to consent the Court declined to apply United States v Knights, 534 US 112, 118 (2001), and regarding “special need” the Court did not turn to Griffin v Wisconsin, 483 US 868 (1987).

. “The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.” US Const Fourth Amend; NY Const, art I, §12.

. Oregon v Hass, 420 US 714, 719 (1975) (emphasis added).

. People v Torres, 74 NY2d 224, 228 (1989) (citations and internal quotation marks omitted). As noted earlier in footnote 5, whether New York will continue to apply the exclusionary rule to parole violation proceedings under the New York Constitution has yet to be resolved by our Court of Appeals although independent state constitutional grounds have been found in a number of cases involving search and seizure.
The court is greatly indebted to Justice Barry Kamins for chronicling the following cases in which the Court of Appeals has applied a more stringent state standard: People v Bigelow, 66 NY2d 417 (1985) (declining to adopt a good faith exception to the exclusionary rule); People v Johnson, 66 NY2d 398 (1985) (adhering to the “bright line” two prong test of Aguilar v Texas, 378 US 108 [1964] and Spinelli v United States, 393 US 410 [1969] in evaluating warrantless searches and seizures based on informant information in *386 stead of adopting the Supreme Court’s “totality of the circumstances” test); see also People v Griminger, 71 NY2d 635, 639 (1988) (rejecting the “totality of the circumstances” test in search warrant cases involving confidential informants); People v Elwell, 50 NY2d 231 (1980) (state standard for “basis of knowledge” consistent with Aguilar /Spinelli); People v Landy, 59 NY2d 369 (1983) (the “totality of circumstances” test is not the benchmark under the New York Constitution); compare People v Gokey, 60 NY2d 309 (1983) (search of defendant’s property incident to arrest), People v Belton, 55 NY2d 49 (1982) (same, although search upheld on “automobile exception” grounds), and People v Blasich, 73 NY2d 673 (1989) (search incident to arrest), with Arizona v Gant, 556 US 332 (2009) (modifying an earlier Supreme Court standard regarding searches of passenger compartment of a vehicle); People v Torres, 74 NY2d 224 (1989) (vehicle search for weapons once suspect is out of and away from the vehicle); People v Class, 67 NY2d 431 (1986) (disallowing entry into vehicle to uncover vehicle identification number); People v Harris, 77 NY2d 434 (1991) (absent sufficient attenuation, voluntary statement obtained outside defendant’s home following arrest without arrest warrant inadmissible on state grounds); People v Scott, 79 NY2d 474 (1992) (State Constitution protects personal expectation of privacy exhibited by posting “no trespassing” signs); People v Keta, 79 NY2d 474 (1992) (“chop shop” administrative search statute unconstitutional on state grounds); People v Hollman, 79 NY2d 181 (1992) (applying state constitutional and common-law principles in warrantless police-citizen encounters as to what constitutes a “seizure”); compare People v Diaz, 81 NY2d 106 (1993) (rejection of “plain touch” doctrine in frisk for weapons cases), and Matter of Marrhonda G., 81 NY2d 942 (1993) (same), with Minnesota v Dickerson, 508 US 366 (1993) (“plain touch” permissible if nature of contraband immediately apparent); People v Martinez, 80 NY2d 444 (1992) (active pursuit of a person may involve a seizure requiring reasonable suspicion on state constitutional grounds). See Barry Kamins, New York Search & Seizure § 1.01 (4) (Matthew Bender rev ed).

. Samson v California, 547 US at 855; compare State v Ochoa, 792 NW2d 260 (2010) (the Iowa Supreme Court applied Iowa standards in response to Samson arguments); State v Bogert, 109 A3d 883 (2014) (the Vermont Supreme Court found suspicionless search of the home of probationer released on a conditional-reentry agreement permissible under both Samson and the State Constitution); In re J.E., 594 Pa 528, 937 A2d 421 (2007) (Pennsylvania Supreme Court found, after Samson, that state law proscribes suspicionless search of juvenile probationers); State v Heaton, 812 NW2d 904 (2012) (Minnesota affords greater rights than accorded in Samson or California).

. People v Huntley, 43 NY2d 175 (1977) (parole violation warrant issued prior to parolee contact).

. People v Huntley, 43 NY2d at 181.

. 9 NYCRR 8003.2 (d).

. In People v De Bour, 40 NY2d 210, 223 (1976), the Court of Appeals calibrated other police/citizen street encounters. The lowest level of interaction involves the right to request information “when there is some objective credible reason for that interference not necessarily indicative of criminality.” The next level is the common-law right to inquire which “is activated by a founded suspicion that criminal activity is afoot and permits a somewhat greater intrusion in that a policeman is entitled to interfere with a citizen to the extent necessary to gain explanatory information, but short of a forcible seizure.” The third level, reasonable suspicion, authorizes a forcible stop and detention by the police if the officer “entertains a reasonable suspicion that a particular person has committed, is committing or is about to commit a felony or misdemeanor.” This is the first point on this sliding scale at which an officer may frisk a person for weapons when “the officer reasonably suspects that he [or she] is in danger of physical injury by virtue of the detainee being armed.” Lastly, a police officer may arrest and take into custody a person when he has probable cause to believe that person has committed a crime, or offense in his presence. CPL 140.10.

. People v Huntley, 43 NY2d at 181. Thus
“in any evaluation of the reasonableness of a particular search or seizure the fact of defendant’s status as a parolee is always relevant and may be critical; what may be unreasonable with respect to an individual who is not on parole may be reasonable with respect to one who is.” Id.

. Id. Accordingly, the cases in which the parole officer was acting as a “stalking horse” for a criminal investigation by police officers have no applicability under the facts found by the court in this matter.

. People v Huntley, 43 NY2d at 183.

. People v Huntley, 43 NY2d at 181-182.

. People v Huntley, 43 NY2d at 183; People v Fridell, 81 AD2d 869, 869 (2d Dept 1981) (“Parole officers are charged with a duality of responsibility and duty — to the public and to the parolee. When they conduct a search of a parolee’s residence, it is required that the search bear a substantially rational and reasonable relation to the officer’s performance of that duty. No more than that, however, has been required”).

. People v Huntley, 43 NY2d 175, 180 (1977); see People v Van Buren, 198 AD2d 533 (2d Dept 1993) (police officer executing parole warrant); People v Gordon, 176 Misc 2d 46 (Sup Ct, Queens County 1998, Demakos, J.).

. People v June, 128 AD3d 1353, 1353 (4th Dept 2015); People v Bellamy, 118 AD3d 1113 (3d Dept 2014) (police information and citizen identification of parolee with a gun); People v Everett, 96 AD3d 1105 (3d Dept 2012); People v Johnson, 94 AD3d 1529 (4th Dept 2012); People v Walker, 80 AD3d 793 (3d Dept 2011); People v Carrington, 25 AD3d 440 (1st Dept 2006).

. People v Johnson, 49 AD3d 1244 (4th Dept 2008).

. People v Scott, 93 AD3d 1193 (4th Dept 2012).

. People v Lloyd, 99 AD3d 1230 (4th Dept 2012); People v Taylor, 97 AD3d 1139 (4th Dept 2012); People v Felder, 272 AD2d 884 (4th Dept 2000).

. People v Rounds, 124 AD3d 1351, 1351 (4th Dept 2015).

. People v Escalera, 121 AD3d 1519, 1520 (4th Dept 2014); People v Johnson, 63 NY2d 888 (1984); People v Davis, 101 AD3d 1778 (4th Dept 2012); People v Colon, 34 AD3d 692 (2d Dept 2006); People v Campbell, 7 AD3d 409 (1st Dept 2004); People v Smith, 234 AD2d 1002 (4th Dept 1996).

. People v Porter, 101 AD3d 44 (3d Dept 2012); People v Burry, 52 AD3d 856 (3d Dept 2008); People v Daniels, 194 Misc 2d 320 (Sup Ct, Queens County 2002, Flaherty, J.).

. People v Nappi, 83 AD3d 1592 (4th Dept 2011) (parolee’s wife); People v Johnson, 54 AD3d 969 (2d Dept 2008) (parolee’s girlfriend); People v Lownes, 40 AD3d 1269 (3d Dept 2007) (parolee’s girlfriend); People v Nelson, 257 AD2d 765 (3d Dept 1999) (parolee’s employer).

. People v Mackie, 77 AD2d 778, 779 (4th Dept 1980) (citations and internal quotation marks omitted); People v Candelaria, 63 AD2d 85, 90 (1st Dept 1978) (“Certainly, evidence properly seized incidental to a search of a parolee’s premises for other contraband may be used in a criminal prosecution, if the search was properly commenced. But a parolee’s status ought not *390 to be exploited to allow a search which is designed solely to collect contraband or evidence in aid of the prosecution of an independent criminal investigation” [citation omitted]).

. People v Driscoll, 101 AD3d 1466, 1467 (3d Dept 2012) (“there is no indication here that the frisk was related to his parole status”); People v LaFontant, 46 AD3d 840 (2d Dept 2007) (search of cell phone following police arrest for gun possession).

. Samson v California, 547 US at 856 (internal quotation marks omitted); Huntley, 43 NY2d at 180-181.

. If the People choose to appeal this ruling, it is hoped that whatever decision is reached by the Fourth Department will address the impact of Samson on parolee searches in New York. This court has reviewed the briefs submitted in seven parolee search cases decided by the Fourth Department since 2011. Only one legal brief cited to Samson and none of the decisions mentioned the case. This is understandable if one accepts this court’s view that the United States Supreme Court would defer to the standard set by the Court of Appeals in Huntley. However, the courts in the Second Circuit have been forced to leave that question open since it has yet to be answered by any New York appellate court. See Gerena v Pezdek, — F Supp 3d —, 2015 WL 513145, 2015 US Dist LEXIS 14221 (ND NY, Feb. 6, 2015, No. 9:13-CV-953 [DNH/ATB]) and cases cited in footnote 6 of that opinion. Applying New York law, the Second Circuit found that search of a parolee’s “storage room was proper under . . . ‘special needs.’ ” United States v Barner, 666 F3d 79, 86 (2d Cir 2012). Also, in another ruling it
“determined that the search . . . satisfied the requirements of Huntley (authorizing parole searches where the search was ‘rationally and substantially related’ to the parole officer’s duty), the search would have also satisfied the lower bar imposed in Samson (upholding ‘suspicionless’ searches where parolee consented ‘anytime, anywhere’ searches). We therefore save any further analysis for a case where a distinction between Huntley and Samson would make a difference.” United States v Watts, 301 Fed Appx 39, 42 n 2 (2d Cir 2008).