People v Smith (2022 NY Slip Op 00790)





People v Smith


2022 NY Slip Op 00790


Decided on February 4, 2022


Appellate Division, Fourth Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on February 4, 2022
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Fourth Judicial Department

PRESENT: SMITH, J.P., PERADOTTO, CARNI, AND BANNISTER, JJ.


1125 KA 20-00955

[*1]THE PEOPLE OF THE STATE OF NEW YORK, RESPONDENT,
v
TOREY SMITH, DEFENDANT-APPELLANT. 






ANDREW D. CORREIA, PUBLIC DEFENDER, LYONS, DAVISON LAW OFFICE PLLC, CANANDAIGUA (MARY P. DAVISON OF COUNSEL), FOR DEFENDANT-APPELLANT. 
MICHAEL D. CALARCO, DISTRICT ATTORNEY, LYONS (R. MICHAEL TANTILLO OF COUNSEL), FOR RESPONDENT.


 Appeal from a judgment of the Wayne County Court (Daniel G. Barrett, J.), rendered May 30, 2019. The judgment convicted defendant, upon a jury verdict, of criminal possession of a controlled substance in the fourth degree. 
It is hereby ORDERED that the judgment so appealed from is unanimously reversed on the law, that part of the omnibus motion seeking to suppress physical evidence is granted, the indictment is dismissed, and the matter is remitted to Wayne County Court for proceedings pursuant to CPL 470.45.
Memorandum: On appeal from a judgment convicting him, upon a jury verdict, of criminal possession of a controlled substance in the fourth degree (Penal Law § 220.09 [1]), defendant contends that County Court erred in refusing to suppress physical evidence discovered in a vehicle by parole officers because the evidence was the fruit of an unlawful search by a police investigator. We agree.
According to the suppression hearing testimony, a police investigator who was conducting a separate criminal investigation contacted defendant's parole officer for assistance in locating defendant so that the police investigator could interview him. Defendant's parole officer knew that defendant would be attending treatment at a health facility on a particular date and at a certain time, and he arranged to meet the police investigator and two other parole officers there. After defendant exited the health facility building, the parole officers stopped defendant and informed him that the police investigator wanted to speak with him. The police investigator then conducted a pat frisk of defendant, purportedly for the purpose of officer safety, and discovered no weapons but did find a set of car keys. Defendant's parole officer requested the keys from the police investigator and, upon pressing the key fob, discovered that the keys activated the lights of a vehicle in the parking lot.
After interviewing defendant in the back of a patrol vehicle, the police investigator left. The parole officers, however, questioned defendant about the vehicle in the parking lot because, under the terms of his parole, defendant was not permitted to drive. Defendant claimed that the vehicle belonged to someone else who was still in the building and said he was waiting for that person to come outside. The parole officers waited with defendant for an hour, but no one came outside to claim the vehicle. During that period, one of the parole officers obtained surveillance video showing that defendant had, in fact, driven the vehicle to the health facility that day. The parole officers thereafter searched the vehicle and found cocaine, among other things, in the closed center console.
In his pretrial omnibus motion, defendant sought suppression of the physical evidence obtained as a result of the search of the vehicle. In its decision following the suppression [*2]hearing, the court determined that the police investigator's frisk of defendant was unlawful and rejected the People's argument that the parole officers would have inevitably discovered that defendant had been driving the vehicle. The court nonetheless concluded that the unlawful search of defendant's person and the seizure of the keys did not taint the parole officers' discovery of the vehicle and search thereof because a lawful justification for the search of the vehicle arose from the parole officers' own independent investigation.
"[A] parolee does 'not surrender his [or her] constitutional rights against unreasonable searches and seizures' merely by virtue of being on parole" (People v McMillan, 29 NY3d 145, 148 [2017], quoting People v Huntley, 43 NY2d 175, 181 [1977]; see People ex rel. Piccarillo v New York State Bd. of Parole, 48 NY2d 76, 82 [1979]). However, given "the dual nature of a parole officer's duties and a parolee's reduced expectation of privacy[,] . . . a parolee's constitutional right to be secure against unreasonable searches and seizures is not violated when a parole officer conducts a warrantless search that is rationally and reasonably related to the performance of the parole officer's duties" (McMillan, 29 NY3d at 148). Courts recognize a distinction between parole officers and police officers when evaluating searches of parolees, however, and "searches that may be reasonably justified if undertaken by a parole officer are not necessarily constitutional if undertaken by a police officer" (id.; see People v Santiago, 176 AD3d 744, 746 [2d Dept 2019], lv denied 34 NY3d 1081 [2019]). Concomitantly, though, " 'in any evaluation of the reasonableness of a particular search or seizure,' whether undertaken by parole or police officers, 'the fact of defendant's status as a parolee is always relevant and may be critical' " (McMillan, 29 NY3d at 148-149, quoting Huntley, 43 NY2d at 181).
With respect to the consequences of an unreasonable search or seizure, "[u]nder well-established exclusionary rule principles, where police have engaged in unlawful activity[,] . . . evidence which is a result of the exploitation of that illegality is subject to suppression as the fruit of the poisonous tree unless one of the recognized exceptions to the exclusionary rule is applicable" (People v Small, 110 AD3d 1138, 1140 [3d Dept 2013] [internal quotation marks omitted]; see People v Jones, 2 NY3d 235, 242 [2004]; People v Gethers, 86 NY2d 159, 161-162 [1995]). The commonly advanced exceptions to the exclusionary rule include, as relevant here, inevitable discovery and independent source (see People v Turriago, 90 NY2d 77, 85 [1997], rearg denied 90 NY2d 936 [1997]; Gethers, 86 NY2d at 162). The Court of Appeals has recognized that the deterrent purpose of the exclusionary rule is broader as a matter of state constitutional law than it is as a matter of federal constitutional law because, while "[t]he exclusionary rule 'was originally created to deter police unlawfulness by removing the incentive' to disregard the law, [it] also 'serves to insure that the State itself, and not just its police officers, respect the constitutional rights of the
accused' " (Jones, 2 NY3d at 241, quoting People v Payton, 51 NY2d 169, 175 [1980]; see People v Lloyd, 174 AD3d 1389, 1390 [4th Dept 2019], lv denied 34 NY3d 982 [2019]).
Initially, the People request that we affirm on the ground that the frisk by the police investigator was lawful. We have no authority to do so. CPL 470.15 (1) constitutes "a legislative restriction on the Appellate Division's power to review issues either decided in an appellant's favor, or not ruled upon, by the trial court" (People v LaFontaine, 92 NY2d 470, 474 [1998], rearg denied 93 NY2d 849 [1999]; see People v Nicholson, 26 NY3d 813, 825 [2016]; People v Concepcion, 17 NY3d 192, 195 [2011]). The statute thus "bars [the Appellate Division] from affirming a judgment, sentence or order on a ground not decided adversely to the appellant by the trial court" (Concepcion, 17 NY3d at 195; see Nicholson, 26 NY3d at 825). Here, inasmuch as the court decided in defendant's favor that the police investigator's frisk was unlawful, we are precluded from reviewing that issue on appeal (see Concepcion, 17 NY3d at 196; see also Nicholson, 26 NY3d at 826).
Similarly, we cannot, as the People urge, affirm on the ground that the inevitable discovery exception to the exclusionary rule applies. Contrary to the People's assertion and as defendant correctly contends, the court expressly rejected the People's invocation of that exception on the merits inasmuch as the court determined, with an accompanying citation to authority, that there was no testimony or evidence in the record that would allow it, beyond its own surmise, to find that the parole officers would have inevitably discovered that defendant was driving the vehicle (see People v Walker, 198 AD2d 785, 787-788 [4th Dept 1993]). Relatedly, the People also assert that the inevitable discovery exception is reviewable notwithstanding LaFontaine/Concepcion because the evaluation of that exception is part of a single multipronged [*3]legal ruling (see People v Garrett, 23 NY3d 878, 885 n 2 [2014], rearg denied 25 NY3d 1215 [2015]). We conclude that the People's assertion lacks merit because, unlike the evaluation of the multiple prongs of a single Brady or Molineux ruling, the exceptions to the exclusionary rule are "separate and analytically distinct" grounds (id.; accord Turriago, 90 NY2d at 85; People v Coles, 105 AD3d 1360, 1363 [4th Dept 2013]).
With respect to the exception at issue on appeal, "where the evidence sought to be suppressed is the product of an independent source entirely free and distinct from proscribed police activity, it should be admissible and not subject to a per se rule of exclusion based solely on the unlawful conduct" (People v Arnau, 58 NY2d 27, 35 [1982], cert denied 468 US 1217 [1984]). "[T]he independent source rule is applicable[ where] there is no causal connection, direct or indirect, proximate or attenuated, between the illegality and the subsequent seizure" (id. at 34). "In cases where this causal nexus is lacking, the exclusionary rule simply does not apply" (id.).
Here, the record establishes that the discovery of the contraband in the vehicle was the direct result of, and not entirely free and distinct from, the police investigator's unlawful search of defendant and seizure of the keys, and the court thus erred in refusing to suppress that evidence (see People v Rosa, 30 AD3d 905, 908 [3d Dept 2006], lv denied 7 NY3d 851 [2006]). Defendant's parole officer testified that he went to the health facility exclusively at the request of the police investigator and not for any independent parole investigation inasmuch as defendant, at that time, was not under suspicion for any parole violations. Another parole officer confirmed that, when they arrived at the scene, the parole officers were not investigating defendant for any reason and had no suspicion that defendant was doing anything other than attending treatment at the health facility that day (see People v Mackie, 77 AD2d 778, 779 [4th Dept 1980]). At that point, the parole officers had no knowledge or reason to suspect that defendant had violated his parole conditions by driving, let alone that he might have done so by operating a particular vehicle. Thus, as defendant correctly contends, the record establishes that, when the parole officers first arrived at the health facility, they were not " 'pursuing parole-related objectives' " but were instead facilitating the police investigator's contact with defendant as part of a separate criminal investigation (People v Taylor, 97 AD3d 1139, 1140 [4th Dept 2012], lv denied 19 NY3d 1029 [2012]; see People v Marcial, 109 AD3d 937, 938 [2d Dept 2013], lv denied 22 NY3d 1200 [2014]).
The testimony further establishes that the parole officers' suspicion of a parole violation and their investigation thereof arose only after defendant's parole officer requested that the police investigator hand over the fruit of the unlawful search and seizure, i.e., the keys, and the police investigator left the scene. The parole officers began their investigation—pressing the fob, questioning defendant, waiting for the purported owner of the vehicle to emerge from the building, and viewing surveillance footage—as a direct result of the unlawful seizure of the keys from defendant's person. Indeed, defendant's parole officer did not learn of defendant's possible connection to the vehicle until he pressed the fob, which activated the lights of the vehicle. Inasmuch as the investigation by the parole officers was precipitated by the police investigator's unlawful seizure of the keys from defendant, the subsequent discovery of the contraband in the vehicle was not "based solely on information obtained prior to and independent of the illegal [search and seizure]" (Arnau, 58 NY2d at 33). Thus, the court's determination that the parole officers' investigation was independent of the unlawful seizure of the keys is not supported by the record.
The People nonetheless insist that the discovery of the contraband was entirely free and distinct from the proscribed police activity because, even before the discovery of the keys, the parole officers observed defendant leaving the health facility alone and walking toward a vehicle in the parking lot and thus had an independent basis to investigate whether defendant had been driving. Even assuming, arguendo, that the People's contention does not improperly rely on principles of inevitable discovery, we conclude that it lacks merit. Initially, as defendant contends, the testimony of defendant's parole officer that he could tell that defendant was walking precisely toward the vehicle in the parking lot is of questionable credibility, if not incredible as a matter of law, given the testimonial and photographic evidence that defendant's parole officer stopped defendant just off the sidewalk, approximately 100 feet from the vehicle in question, which was parked on the opposite side of the parking lot in a row of other cars. In any event, there is no evidence that the parole officers actually investigated whether defendant [*4]operated any vehicle, let alone the particular vehicle at issue, on the basis of defendant's presence in the parking lot and prior to the unlawful seizure of the keys. Moreover, even if defendant's parole officer had, as he testified, somehow anticipated that the key fob might open the vehicle, his testimony indisputably establishes that he confirmed any such suspicion by pressing the fob that had been illegally seized by the police investigator and thereafter commenced an investigation into defendant's possible parole violation. In sum, there is no basis in the record on which to conclude that the contraband discovered in the vehicle was "the product of an independent source entirely free and distinct from proscribed police activity" (Arnau, 58 NY2d at 35 [emphasis added]).
Based on the foregoing, we conclude that the court erred in refusing to suppress the physical evidence obtained from the vehicle. Inasmuch as our determination results in the suppression of all evidence supporting the crime charged, the indictment must be dismissed (see People v Lopez, 149 AD3d 1545, 1548 [4th Dept 2017]; People v Freeman, 144 AD3d 1650, 1651 [4th Dept 2016]). We therefore reverse the judgment, grant that part of defendant's omnibus motion seeking to suppress physical evidence, dismiss the indictment, and remit the matter to County Court for proceedings pursuant to CPL 470.45. In light of our decision, we do not address defendant's remaining contentions.
Entered: February 4, 2022
Ann Dillon Flynn
Clerk of the Court