People v Lively (2023 NY Slip Op 04052)

People v Lively

2023 NY Slip Op 04052

Decided on July 28, 2023

Appellate Division, Fourth Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on July 28, 2023
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Fourth Judicial Department

PRESENT: WHALEN, P.J., PERADOTTO, BANNISTER, MONTOUR, AND GREENWOOD, JJ.

511 KA 22-00970

[*1]THE PEOPLE OF THE STATE OF NEW YORK, RESPONDENT,
v
EUGENE L. LIVELY, DEFENDANT-APPELLANT. 

KAREN G. LESLIE, RIVERHEAD, FOR DEFENDANT-APPELLANT. 
KRISTYNA S. MILLS, DISTRICT ATTORNEY, WATERTOWN (MORGAN R. MAYER OF COUNSEL), FOR RESPONDENT. 

 Appeal from a judgment of the Jefferson County Court (David A. Renzi, J.), rendered April 4, 2022. The judgment convicted defendant upon a nonjury verdict of criminal possession of a controlled substance in the third degree. 
It is hereby ORDERED that the judgment so appealed from is affirmed.
Memorandum: Defendant appeals from a judgment convicting him following a nonjury trial of criminal possession of a controlled substance in the third degree (Penal Law § 220.16 [1]). We reject defendant's contention that County Court erred in refusing to suppress physical evidence found during the search of defendant's person and residence by parole officers. "[A] parolee's constitutional right to be secure against unreasonable searches and seizures is not violated when a parole officer conducts a warrantless search that is rationally and reasonably related to the performance of the parole officer's duties" (People v McMillan, 29 NY3d 145, 148 [2017]; see People v Huntley, 43 NY2d 175, 181 [1977]). "A parole officer's search is unlawful, however, when the parole officer is merely a conduit for doing what the police could not do otherwise" (People v Sapp, 147 AD3d 1532, 1533 [4th Dept 2017], lv denied 29 NY3d 1086 [2017] [internal quotation marks omitted]). In other words, a parolee's status may not "be exploited to allow a search which is designed solely to collect contraband or evidence in aid of the prosecution of an independent criminal investigation" (id. [internal quotation marks omitted]). Here, no such improper exploitation occurred. At the suppression hearing, a parole officer testified that she was familiar with defendant through her prior home visits to defendant's residence with defendant's assigned parole officer; that the conditions of defendant's parole included a consent to searches of his person and residence; and that the unannounced home visit was prompted by a request from another parole officer to conduct the visit to look for a parole absconder who might be in defendant's residence. That conduct is unquestionably "substantially related to the performance of [the parole officer's] duty in the particular circumstances" (Huntley, 43 NY2d at 181), and we afford deference to the court's determination that the parole officer's testimony was credible (see People v Johnson, 94 AD3d 1529, 1532 [4th Dept 2012], lv denied 19 NY3d 974 [2012]; see generally People v Prochilo, 41 NY2d 759, 761 [1977]). Further, there is no evidence from which to infer that the parole officers conducting the search were "not pursuing parole-related objectives but were instead facilitating [a] police investigator's contact with defendant as part of a separate criminal investigation" (People v Smith, 202 AD3d 1492, 1495-1496 [4th Dept 2022] [internal quotation marks omitted]; cf. People v Mackie, 77 AD2d 778, 778-779 [4th Dept 1980]).
Defendant's further contention that the conviction is not supported by legally sufficient evidence is not preserved for our review inasmuch as he failed to renew his motion to dismiss after presenting proof (see People v Hines, 97 NY2d 56, 61 [2001], rearg denied 97 NY2d 678 [2001]; People v Nash, 214 AD3d 1461, 1461 [4th Dept 2023], lv denied — NY3d — [2023]). We nonetheless "necessarily review the evidence adduced as to each . . . element[ ] of the crime[ ] in the context of our review of defendant's challenge regarding the weight of the evidence" [*2](People v Stepney, 93 AD3d 1297, 1298 [4th Dept 2012], lv denied 19 NY3d 968 [2012] [internal quotation marks omitted]; see People v Danielson, 9 NY3d 342, 349 [2007]). Here, viewing the evidence in light of the elements of the crime in this nonjury trial (see Danielson, 9 NY3d at 349), we conclude that the verdict is not against the weight of the evidence (see generally People v Bleakley, 69 NY2d 490, 495 [1987]). Even assuming, arguendo, that a different verdict would not have been unreasonable, we conclude that it cannot be said that the court "failed to give the evidence the weight it should be accorded" (People v Albert, 129 AD3d 1652, 1653 [4th Dept 2015], lv denied 27 NY3d 990 [2016]).
We have reviewed defendant's remaining contentions and conclude that none warrants modification or reversal of the judgment. Finally, the sentence is not unduly harsh or severe.
All concur except Bannister and Montour, JJ., who dissent and vote to reverse in accordance with the following memorandum: We respectfully dissent inasmuch as we conclude that County Court erred in refusing to suppress physical evidence found during the search of defendant's residence and person by parole officers. A parolee has a constitutional right to be free from unreasonable searches and seizures (see People v Hale, 93 NY2d 454, 459 [1999]; People v Johnson, 94 AD3d 1529, 1531 [4th Dept 2012], lv denied 19 NY3d 974 [2012]). Where "the search and seizure is undertaken by the parolee's own parole officer, . . . whether the action was unreasonable and thus prohibited by constitutional proscription must turn on whether the conduct of the parole officer was rationally and reasonably related to the performance of the parole officer's duty" (People v Huntley, 43 NY2d 175, 181 [1977] [emphasis added]).
Here, the evidence adduced at the suppression hearing failed to establish that the search of defendant's pocket was rationally and reasonably related to the duty of defendant's parole officer with respect to the parolee defendant. A parole officer who assisted with the search testified at the suppression hearing that she was asked to assist in searching defendant's home for an unidentified parolee who had apparently absconded from parole. The record is silent as to why the parole officers believed that the absconder may have been present in defendant's apartment. Further, there was no testimony at the hearing by defendant's parole officer. Importantly, there was no testimony by defendant's parole officer that the search was related to any determination that defendant violated or was violating any condition of his parole or that the parole officers were conducting an unannounced search related to defendant's status as a parolee (see People v Smith, 202 AD3d 1492, 1495 [4th Dept 2022]). Thus, there was no evidence that the decision to search defendant's residence "was motivated . . . by legitimate reasons related to defendant's status as a parolee" (Johnson, 94 AD3d at 1532 [emphasis added]).
Rather, to justify the initial entry into the apartment for the search, the People relied solely on the assisting parole officer's testimony that parolees consent to searches of their person and residence as a condition of parole. However, that "authorization is not an unrestricted consent to any and all searches and does not obviate a showing by the parole officer that the search was rationally related to [the officer's] duty to detect and prevent parole violations" (People v Mackie, 77 AD2d 778, 779 [4th Dept 1980]), and we are unaware of any case law that stands for the proposition that a showing that a parole officer's actions were rationally related to that officer's duty to detect and prevent the parole violations of one parolee was sufficient to render a search or seizure with respect to a separate parolee reasonable. Further, upon entering the apartment, the parole officers handcuffed defendant "for [officer] safety . . . because there [were] multiple people in the apartment." There is no evidence, however, that defendant was handcuffed because the parole officers had reason to believe that defendant was armed or presented a safety risk. Once defendant was handcuffed, the testifying parole officer conducted a pat down of defendant "because there was a bulge in his left pocket." That parole officer did not testify that she believed that the bulge may have been a weapon—unlikely in this case because the bulge, it transpired, was caused by an earbud container—or that she had reason to believe that the bulge contained contraband. The People "adduced no evidence showing that the parole officer had any reason to suspect that . . . defendant had violated any condition of his parole" (id.).
Inasmuch as the testimony presented at the hearing by the People established that the parole officers' sole purpose for entering defendant's residence was to determine whether a parole absconder was present, we conclude that the search of defendant's pocket "was not reasonably designed to lead to evidence of a parole violation" (People v LaFontant, 46 AD3d [*3]840, 841 [2d Dept 2007], lv denied 10 NY3d 841 [2008]). We would therefore reverse the judgment, grant that part of defendant's omnibus motion seeking to suppress the physical evidence, and dismiss the indictment.
Entered: July 28, 2023
Ann Dillon Flynn
Clerk of the Court