People v Lively (2024 NY Slip Op 02767)

People v Lively

2024 NY Slip Op 02767 [42 NY3d 178]

May 21, 2024

Troutman, J.

Court of Appeals

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

As corrected through Wednesday, October 9, 2024

[*1]

The People of the State of New York, Respondent,
v
Eugene L. Lively, Appellant.

Argued April 17, 2024; decided May 21, 2024

People v Lively, 218 AD3d 1312, reversed.

{**42 NY3d at 180} OPINION OF THE COURT

Troutman, J.

In People v Huntley, this Court held that parolees do not surrender their constitutional rights against unreasonable searches and seizures (43 NY2d 175 [1977]). Because the People failed to establish at the suppression hearing that the search of defendant's pocket was substantially related to the performance of the parole officers' duties, defendant's suppression motion should have been granted.
In February of 2021, defendant, who was on parole, was visited by parole officers at his home. A parole officer searched his person, recovered a small case used for headphones from his pocket, and upon opening the case, discovered heroin. Defendant was subsequently charged with one count of criminal possession of a controlled substance in the third degree.[FN*]
Defendant moved to suppress the physical evidence recovered from him. During a suppression hearing, a parole officer testified that defendant had signed the standard form regarding the terms and conditions of parole, which required him to submit to searches of his residence and person. The officer further testified that she was asked to conduct a home visit at defendant's residence to search for a parole absconder, whom the{**42 NY3d at 181} parole officer believed was "potentially" at defendant's home. The alleged absconder was not identified on the record. When the parole [*2]officers arrived, they handcuffed defendant for the officers' safety. The officer who testified then conducted a pat-down of defendant because she observed a bulge in his pocket. Upon a further search of his pocket, the officer recovered an earbud case containing suspected narcotics, which tested positive for heroin.
The suppression court denied defendant's motion, concluding that the search was lawful because the parole officers were acting in the performance of their duties. Following a bench trial, defendant was convicted of third-degree criminal possession of a controlled substance.
On appeal, the Appellate Division affirmed the judgment in a split decision (218 AD3d 1312 [4th Dept 2023]). The majority held that the search of defendant was substantially related to the performance of the parole officers' duties and that the parole officers were not acting as agents of the police or searching for evidence as part of a separate criminal investigation (see id. at 1312-1313). Two dissenting Justices would have held that the search of defendant's pocket was unlawful because there was no evidence that the search was "related to defendant's status as a parolee" or that defendant had violated the conditions of his parole (see id. at 1314-1315 [Bannister & Montour, JJ., dissenting]). A dissenting Justice granted defendant leave to appeal to this Court. We now reverse.
In Huntley, we established the standard for searches of parolees. We agreed with the defendant that parolees do not surrender all constitutional rights against unreasonable searches and seizures (see 43 NY2d at 181-183). We observed that "in any evaluation of the reasonableness of a particular search or seizure the fact of defendant's status as a parolee is always relevant and may be critical; what may be unreasonable with respect to an individual who is not on parole may be reasonable with respect to one who is" (id. at 181). Accordingly, for parole officer searches of parolees, "whether the action was unreasonable and thus prohibited by constitutional proscription must turn on whether the conduct of the parole officer was rationally and reasonably related to the performance of the parole officer's duty" (id.).
Turning to the application of Huntley in this case, the People failed to satisfy their burden at the suppression hearing to{**42 NY3d at 182} demonstrate that the search of defendant's pocket was rationally and reasonably related to the parole officers' duties under the particular circumstances presented. Although the People assert on appeal that any assistance defendant provided to the parole absconder would be a violation of defendant's own terms and conditions of parole, the record is silent as to whether defendant provided any such assistance or how any such assistance might be related to the search of defendant's pocket. The evidence at the suppression hearing established only that the parole officers went to defendant's residence to search for a different parolee. The People failed to elicit evidence during the suppression hearing regarding defendant's relationship, if any, with the unnamed absconder, nor did the People establish that defendant was even aware that this person was on parole or had absconded. Moreover, the People did not introduce any evidence that defendant was suspected of harboring an absconder or was otherwise violating the terms and conditions of his parole.
Of course, unannounced home visits are a common feature of parole supervision, and the presence of parole officers at defendant's home is not problematic. Importantly, however, in Huntley, we observed that to meet the required standard for searches of parolees, "[i]t would not be enough necessarily that there was some rational connection" between the parole officer's conduct and the performance of the officer's duties; rather, "the particular conduct must also have been substantially related to the performance of duty in the particular circumstances" (id. at 181).
Here, the People failed to meet their burden to establish that the search of defendant's pocket was substantially related to the performance of the parole officers' duties in the particular circumstances presented, i.e., the search of defendant's residence for a parole absconder. Nor did the People present any evidence at the hearing that circumstances that developed after the parole officers arrived at defendant's residence rendered the search of his pocket substantially related to the performance of their duties. On this record, the parole officer had no reason to continue the brief pat-down search of the exterior of defendant's person by searching his pocket and investigating the contents of an earbud case.
The People's reliance on the fact that the parole officers were not acting as agents of police or searching for evidence of a crime is misplaced (see also 218 AD3d at 1313). Granted, we{**42 NY3d at 183} acknowledged in Huntley that "conduct which may be unreasonable with respect to a parolee if undertaken by a police officer may be reasonable if taken by the parolee's own parole officer," and we thought it "significant" that the parole officers were not "seeking contraband or evidence in aid of prosecution for criminal activity" (Huntley, 43 NY2d at 181-182). The Appellate [*3]Division has similarly observed that a parole officer's search is unlawful when the parole officer is acting as a "conduit for doing what the police could not do otherwise" (People v Escalera, 121 AD3d 1519, 1520 [4th Dept 2014] [internal quotation marks omitted], lv denied 24 NY3d 1083 [2014]; see also People v Candelaria, 63 AD2d 85, 90 [1st Dept 1978]). But the absence of evidence that parole officers were acting as agents of the police, standing alone, is insufficient to render a parole search lawful. The Huntley standard must also be satisfied.
In light of our conclusion, defendant's remaining contentions, to the extent reviewable, are academic.
Accordingly, the order of the Appellate Division should be reversed and the indictment dismissed.
Chief Judge Wilson and Judges Rivera, Garcia, Singas, Cannataro and Halligan concur.
Order reversed and indictment dismissed.

Footnotes

Footnote *:Defendant was acquitted of a charge related to possession of Suboxone.