In the Matter of DOMINIQUE W., a Person Alleged to be a Juvenile Delinquent, Appellant. [923 NYS2d 513]—

Order of disposition, Family Court, Bronx County (Robert R. Reed, J., at suppression and fact-finding hearings; Nancy M. Bannon, J., at disposition), entered on or about February 1, 2010, which adjudicated appellant a juvenile delinquent, upon a fact-finding determination that he had committed acts which, if committed by an adult, would constitute the crime of possession of an imitation firearm, in violation of Administrative Code of the City of New York § 10-131 (g), and placed him on probation for a period of 12 months, affirmed, without costs.

The court properly denied appellant's suppression motion. The police officers responded to a radio run based on an anonymous tip that a male black approximately 16 years of age was pointing a BB gun into the air. According to the radio run, the subject was sitting on a park bench, had a black bag, and was wearing a white T-shirt, black shorts and white sneakers. From approximately one block away, the officers went to the location and saw approximately six young men, including appellant, in the park. Appellant, who was sitting on a bench, was the only

658

one who matched the description. The officers asked appellant if he had a gun. Appellant stated that he had a BB gun in his bag, and showed it to the officers. The radio run, coupled with the description of the suspect that matched defendant's appearance, gave the police a founded suspicion that criminal activity was afoot (*see People v De Bour*, 40 NY2d 210, 223 [1976]). Therefore, the police acted within their common-law right to seek explanatory information while stopping short of making a forcible seizure when they asked appellant if he had a gun. A different conclusion is not warranted by the slight discrepancy in the description of appellant's clothing (*see e.g. People v Smalls*, 292 AD2d 213 [2002], *lv denied* 98 NY2d 681 [2002]). In reaching its conclusion, the hearing court credited the police officers' testimony and rejected that of appellant. We find no basis for disturbing the court's credibility determinations inasmuch as they are supported by the record (*see People v Prochilo*, 41 NY2d 759 [1977]). We therefore disagree with the dissent's premise that there was an unlawful seizure since that premise seems to be based upon testimony that the court did not credit. *People v Moore* (6 NY3d 496 [2006]), a case cited by the dissent, is distinguishable because it involved a gunpoint stop that "unquestionably constituted a seizure of [the suspect's] person" before any inquiry occurred (*id.* at 499). We also distinguish *Matter of Jahad R.* (12 AD3d 154 [2004]) and *Matter of Koleaf J.* (285 AD2d 418 [2001]), cases cited by the dissent, because those cases involved anonymous tips that led to seizures, as opposed to the exercise of the police officers' common-law right to inquire upon a founded suspicion that criminal activity was afoot (*see People v De Bour*, 40 NY2d at 223). Moreover, the anonymous tip in this case was corroborated by the police officers' observation of appellant's clothing, the black bag in his possession, and the fact that he was seated on a bench as described in the radio run (*compare Matter of Jahad R.*, 12 AD3d at 155). Concur—Sweeny, J.P., Moskowitz, DeGrasse and Richter, JJ.

Freedman, J., dissents in a memorandum as follows: I respectfully dissent, and would grant appellant's motion to suppress the BB gun that formed the basis of his adjudication for violating Administrative Code of City of NY § 10-131 (g). The facts here are that two police officers received a radio run based on an anonymous tip describing a black male of about 16 years of age sitting on a park bench near 2741 Schley holding a BB gun, and then putting it into a duffel bag. It is not clear whether the caller said black duffel bag or just duffel bag. The caller further stated that the suspect was wearing a white shirt, black shorts, and sneakers. Two plainclothes officers shortly thereafter ap-

proached appellant, who was with six or seven others. They did not see a gun.

According to the officers, they "went to the guy that matched the description with the white shirt" and "had a black bag." Officer Franco testified, "I approached [appellant] and I asked him if he had a BB gun on him. He said yes and handed it over to me . . . from out of his bag." Appellant testified that four officers approached him and the others and asked "who has a BB gun" and then said, "Open your bags, everyone open their bags." The others opened their bags, but he did not, and Officer Franco then took his bag, opened it, and removed the BB gun. He also stated that after the others had opened their bags, he "told Officer Franco that [the other] kids had nothing to do with this situation." Appellant, aged 14, was arrested immediately after the officers obtained the gun. By this time there were other police officers present, including Officer Ortiz, who prepared the arrest report. The arrest report stated that appellant was wearing "shorts-black," "sandals-black," "T-shirt or Tank Top-Gray," and "headgear-unk unknown color." There was no indication that appellant changed his shoes or his shirt between the time of the arrest and the time the arrest report was prepared. The report also indicated that there had been a frisk.

The hearing court believed the officers' testimony, and did not credit appellant's testimony concerning the arrest. For purposes of review, I will credit the court's findings. The issue is whether, under the standards set forth in *People v De Bour* (40 NY2d 210 [1976]) and reiterated in *People v Hollman* (79 NY2d 181 [1992]), the People have established a sufficient basis for a level two or three inquiry. According to *De Bour* and *Hollman*, there are four levels of police intrusion, each of which is justified by a different degree of suspicion. The first, "[t]he minimal intrusion of approaching to request information," or level one inquiry, is authorized where "there is some objective credible reason for that interference not necessarily indicative of criminality" (*De Bour*, 40 NY2d at 223). Requesting information concerning identity, address, purpose or destination falls into this category. Here, the radio run, although anonymous and not corroborated, was sufficient for the officers to approach appellant, who was in the vicinity of the alleged sighting, and request information.

Level two, defined as "the common-law right to inquire, is activated by a founded suspicion that criminal activity is afoot" (*id.*). Level three, a forcible stop and detention, is authorized where a police officer "entertains a reasonable suspicion that a

particular person has committed, is committing or is about to commit a felony or misdemeanor" (*id.*).

At that point, an officer may detain and frisk the person if the officer reasonably suspects that he is in danger of physical injury because the person is armed. Approaching a teenager seated on a bench in the company of other teens and pointedly asking if he has a BB gun on him could be a level two inquiry, but under the circumstances here, it was a pointed and threatening inquiry; thus, it comes closer to a level three detention. Appellant testified that the officers approached the group and demanded that they open bags, and seized an unopened bag; this intrusion clearly constitutes a level three stop, which is justified only where the officer has a reasonable suspicion to believe that the suspect has committed, is committing, or is about to commit a crime or is armed. Two police officers asking a seated individual if he has a gun on him, i.e., if he is committing a crime, is more than a common-law inquiry, although it might not be a full-fledged level three detention.

The facts of this case are insufficient to justify the detention that occurred here. The officers had received an anonymous tip that a 16-year-old had a BB gun that he put into a bag. The description of the alleged perpetrator included black shorts, a white top, and white sneakers. Appellant was 14 years old, and was wearing a gray shirt or tank top and black sandals. He was also wearing headgear, not mentioned by the caller. Finally, he had a black book bag, not a duffel bag. Only the black shorts, and possibly the bag, fit the description that the officers received from the radio run. No one came forward to identify the "suspect" during the time that the officers were present, and no follow-up calls were received. Thus, the officers had neither reasonable suspicion that criminal activity was afoot nor reasonable suspicion that a particular person, appellant, was about to commit a felony or misdemeanor. In *People v Moore* (6 NY3d 496 [2006]), the Court of Appeals determined that an anonymous tip about an individual wearing a red shirt and grey hat was an insufficient basis for a detention. Similarly, in *Matter of Jahad R.* (12 AD3d 154 [2004]), and *Matter of Koleaf J.* (285 AD2d 418 [2001]), this Court rejected anonymous phone calls with general descriptions of young people allegedly handling guns as a sufficient basis for level three detentions. Based on the foregoing, I find that there was insufficient justification for the detention that occurred here, and would grant the suppression motion.