# SUPREME COURT OF THE STATE OF NEW YORK
## *Appellate Division, Fourth Judicial Department*

**444**

**KA 14-01562**

PRESENT: WHALEN, P.J., SMITH, CENTRA, TROUTMAN, AND SCUDDER, JJ.

---

THE PEOPLE OF THE STATE OF NEW YORK, RESPONDENT,

V                                    MEMORANDUM AND ORDER

PABLO W. LOPEZ, DEFENDANT-APPELLANT.

---

EASTON THOMPSON KASPEREK SHIFFRIN LLP, ROCHESTER (BRIAN SHIFFRIN OF COUNSEL), FOR DEFENDANT-APPELLANT.

SANDRA DOORLEY, DISTRICT ATTORNEY, ROCHESTER (DANIEL GROSS OF COUNSEL), FOR RESPONDENT.

---

Appeal from a judgment of the Supreme Court, Monroe County (Joanne M. Winslow, J.), rendered February 25, 2014. The judgment convicted defendant, upon a jury verdict, of criminal possession of a weapon in the second degree (two counts).

It is hereby ORDERED that the judgment so appealed from is unanimously reversed on the law, that part of defendant's motion seeking to suppress tangible evidence is granted, the indictment is dismissed, and the matter is remitted to Supreme Court, Monroe County, for proceedings pursuant to CPL 470.45.

Memorandum: On appeal from a judgment convicting him upon a jury verdict of two counts of criminal possession of a weapon in the second degree, defendant contends that Supreme Court erred in denying his motion to suppress two semi-automatic pistols recovered by Rochester police officers following the stop and subsequent chase of defendant's vehicle. We agree.

The evidence at the suppression hearing established that police officers responded to two calls, approximately an hour apart, concerning an address on North Goodman Street. The first call was for "family trouble," and the second was for "shots fired." The complainant provided a detailed description of the suspect in both incidents, her children's father, which was broadcast by the police dispatcher following the second incident. The suspect was described as an Hispanic male, five foot seven, with tattoos on his neck and arms, dark clothing, including a Yankees baseball cap, and crossed, "Asian-type" eyes. Approximately half an hour after the second call, an officer spotted an Hispanic man with tattoos on his neck and arms walking on North Goodman Street. Although there were several police cars at the scene, the man "had . . . a straight ahead stare, would not look towards [the officer], would not look at any of the police

cars sitting on the street, just walked ahead and looked straight ahead." After the man passed him, the officer observed him get into the rear seat of a vehicle, which proceeded in the officer's direction. The officer stopped the vehicle and, when he looked inside, he saw that "the front seat passenger was a male Hispanic with tattoos on his neck, and he also had Asian style eyes which were also crossed." The front seat passenger, who turned out to be the suspect involved in the two incidents, also had a handgun in his waistband. The officer drew his service weapon and instructed defendant, the driver, to turn the car off. Defendant did not comply, but instead drove away with several police cars in pursuit. After a short chase, defendant stopped his vehicle and the occupants were arrested. The rear seat passenger was wearing a white T-shirt and pajama pants. Officers thereafter recovered two pistols on the route taken by defendant. The court denied defendant's motion to suppress the handguns, concluding that the officer was justified in stopping defendant's vehicle.

"Although the determination of the suppression court is entitled to great weight (see *People v Prochilo*, 41 NY2d 759, 761 [1977]), we have the fact-finding authority to determine whether the police conduct was justified (see *People v McRay*, 51 NY2d 594, 605 [1980])" (*People v Noah*, 107 AD3d 1411, 1412), and we conclude that the weapons should have been suppressed as the fruit of an illegal stop. The necessary predicate for the stop of defendant's vehicle was "at least a reasonable suspicion that the driver or occupants of the vehicle have committed, are committing, or are about to commit a crime" (*People v Spencer*, 84 NY2d 749, 753, *cert denied* 516 US 905; see *People v Brooks*, 266 AD2d 864, 864). Here, the stop was premised upon the officer's belief that the man who got into the rear seat of defendant's vehicle was the suspect in the two incidents on North Goodman Street. The man the officer observed walking past him matched the most general part of the complainant's description, i.e., an Hispanic male, and he also had tattoos on his neck and arms. The officer could not tell, however, whether the man had the most distinctive feature in that description, i.e., crossed, "Asian style" eyes (cf. *People v Rodriquez*, 144 AD3d 498, 498, *lv denied* 28 NY3d 1188; *People v Cash J.Y.*, 60 AD3d 1487, 1488-1489, *lv denied* 12 NY3d 913; *People v Johnson*, 207 AD2d 806, 807, *lv denied* 84 NY2d 1033). Moreover, the clothing worn by the man did not in any way match the description of the suspect's clothing provided by the complainant, and the discrepancies cannot be characterized as slight (cf. *People v Brujan*, 104 AD3d 481, 481, *lv denied* 21 NY3d 1014; *Matter of Dominique W.*, 84 AD3d 657, 658; *People v Smalls*, 292 AD2d 213, 214, *lv denied* 98 NY2d 681). Rather, the inconsistencies between the suspect's clothing as described by the complainant and the clothing worn by the man who walked past the officer on North Goodman Street rendered the officer's suspicion that the man was the suspect less than reasonable (see *People v Thompson*, 127 AD3d 658, 661; *Noah*, 107 AD3d at 1412; *People v Polhill*, 102 AD3d 988, 989; *People v Beckett*, 88 AD3d 898, 900). Contrary to the People's contention, moreover, we conclude that the man's conduct in staring straight ahead as he walked among the police cars was "innocuous and readily susceptible of an innocent interpretation" and, as such, did not generate a reasonable suspicion

of criminality (*People v Powell*, 246 AD2d 366, 369, *appeal dismissed* 92 NY2d 886).

Given that the stop of defendant's vehicle was not supported by a reasonable suspicion of criminality, the officer's observation of the actual suspect in the front seat with a weapon in his waistband was "the unattenuated by-product of the [illegal] stop" (*People v Smith*, 1 AD3d 965, 966) and, inasmuch as the disposal of the weapons during the ensuing chase was precipitated by that illegality, the weapons should have been suppressed (*see People v Carmichael*, 92 AD3d 687, 688, *lv dismissed* 19 NY3d 958; *People v McFadden*, 136 AD2d 934, 935).  In addition, because our determination results in the suppression of all evidence supporting the crimes charged, the indictment must be dismissed (*see People v Freeman*, 144 AD3d 1650, 1651).

We therefore reverse the judgment and grant defendant's motion insofar as it sought suppression of tangible evidence, dismiss the indictment, and remit the matter to Supreme Court for proceedings pursuant to CPL 470.45.  In light of our decision, we do not address defendant's remaining contentions.

Entered:  April 28, 2017                                     Frances E. Cafarell
                                                             Clerk of the Court