People v Spinks (2018 NY Slip Op 05103)





People v Spinks


2018 NY Slip Op 05103


Decided on July 6, 2018


Appellate Division, Fourth Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on July 6, 2018
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Fourth Judicial Department

PRESENT: WHALEN, P.J., SMITH, CARNI, NEMOYER, AND TROUTMAN, JJ.


797 KA 14-01048

[*1]THE PEOPLE OF THE STATE OF NEW YORK, RESPONDENT,
v
JONATHAN W. SPINKS, DEFENDANT-APPELLANT. 






EASTON THOMPSON KASPEREK SHIFFRIN LLP, ROCHESTER (BRIAN SHIFFRIN OF COUNSEL), FOR DEFENDANT-APPELLANT.
SANDRA DOORLEY, DISTRICT ATTORNEY, ROCHESTER (JOSEPH R. PLUKAS OF COUNSEL), FOR RESPONDENT. 


 Appeal from a judgment of the Supreme Court, Monroe County (Francis A. Affronti, J.), rendered April 29, 2014. The judgment convicted defendant, upon a jury verdict, of robbery in the first degree and robbery in the second degree (two counts). 
It is hereby ORDERED that the judgment so appealed from is unanimously reversed on the law, that part of the omnibus motion seeking to suppress the showup identification evidence is granted and the matter is remitted to Supreme Court, Monroe County, for further proceedings in accordance with the following memorandum: On appeal from a judgment convicting him upon a jury verdict of robbery in the first degree (Penal Law § 160.15 [4]) and two counts of robbery in the second degree (§ 160.10 [1], [2] [a]), defendant contends that Supreme Court erred in denying those parts of his omnibus motion seeking to suppress a showup identification of defendant made by the victim and a cell phone. We agree with defendant in part and conclude that the showup identification should have been suppressed.
The evidence at the suppression hearing establishes that police officers responded to a 911 dispatch at 1:15 a.m. indicating that a taxicab driver had been robbed and possibly pistol whipped on State Street in the City of Rochester. Two to three minutes later, an updated dispatch described the suspects as three black males wearing "all black clothing" and stated that one of the suspects was carrying a book bag. The updated dispatch indicated that the men were headed east on Platt Street, which is east of State Street. "Within two to three minutes" of that updated dispatch, an officer spotted three black men wearing dark clothing with one carrying a book bag at the intersection of Jay Street and Verona Street, which is located to the west of State Street. The men were walking in a southwesterly direction on Jay Street. Upon seeing the officer, two of the men fled and ran through a nearby park before being apprehended. Defendant, however, made no attempt to flee or to avoid interaction with the officer. After defendant was taken into custody, he was positively identified by the victim during a showup procedure. A cell phone was recovered near the intersection where defendant was stopped and detained. The court refused to suppress the showup identification and the cell phone, concluding that the officer had reasonable suspicion that defendant had committed a crime.
Although the determination of the suppression court is afforded great weight, this Court has the same "fact-finding authority to determine whether the police conduct was justified" (People v Lopez, 149 AD3d 1545, 1546-1547 [4th Dept 2017]; see People v McRay, 51 NY2d 594, 605 [1980]; People v Prochilo, 41 NY2d 759, 761 [1977]; People v Noah, 107 AD3d 1411, 1412 [4th Dept 2013]). We reject defendant's contention that suppression of the recovered cell phone is required inasmuch as there was no evidence that the phone was discarded as a result of unlawful police activity (see generally People v Wilkerson, 64 NY2d 749, 750 [1984]). We agree with defendant, however, that the showup identification should have been suppressed as the fruit of an illegal stop and detention.
The necessary predicate for stopping and detaining defendant was that the officer have " at least a reasonable suspicion that [defendant] ha[d] committed, [was] committing, or [was] about to commit a crime' " (Lopez, 149 AD3d at 1547; see People v Hough, 151 AD3d 1591, 1592 [4th Dept 2017], lv denied 30 NY3d 950 [2017]; People v Lightfoot, 124 AD3d 802, 803 [2d Dept 2015], lv denied 25 NY3d 990 [2015]). Here, even assuming, arguendo, that the as-yet unidentified 911 caller was reliable and had a sufficient basis of knowledge (see People v Ingram, 114 AD3d 1290, 1292 [4th Dept 2014], appeal dismissed 24 NY3d 1201 [2015]; People v Jackson, 108 AD3d 1079, 1079 [4th Dept 2013], lv denied 22 NY3d 997 [2013]; see generally People v Argyris, 24 NY3d 1138, 1140-1141 [2014], rearg denied 24 NY3d 1211 [2015], cert denied 577 US &mdash, 136 S Ct 793 [2016]), we conclude that the information available to the detaining officer did not provide reasonable suspicion to stop and detain defendant.
While the general description of the men matched the description provided by the 911 dispatcher, the court failed to give adequate consideration to the difference between the location where the dispatcher stated that the suspects had been observed running from the crime scene, i.e., east of State Street, and the location where the officer stopped defendant, i.e., west of State Street. Significantly, there was no testimony at the suppression hearing that defendant or the other two men had been running or appeared out of breath even though they were located nearly half a mile from the reported location within a short period of time of the relevant dispatch (see People v Thomas, 300 AD2d 416, 416 [2d Dept 2002], lv denied 99 NY2d 620 [2003]; cf. People v Carson, 122 AD3d 1391, 1392 [4th Dept 2014], lv denied 25 NY3d 1161 [2015]). Further, the court relied on the fact that there were no other persons present in the general vicinity where defendant was stopped. The detaining officer conceded, however, that no search had occurred on the east side of State Street—the area where the suspects had originally been observed (cf. People v Nelson, 24 AD3d 253, 254 [1st Dept 2005], lv denied 6 NY3d 816 [2006]). Although the two men accompanying defendant fled upon seeing the detaining officer, "[t]he flight of [some] member[s] of a group is hardly indicative of the collective guilt of the group. It is just as readily demonstrative of the innocence of [defendant,] who remain[ed] at the scene" (People v Thompson, 127 AD3d 658, 661 [1st Dept 2015]). We therefore conclude that the victim's identification of defendant at the showup procedure must be suppressed as the unattenuated product of an illegal stop and detention (see generally People v Dodt, 61 NY2d 408, 417 [1984]).
We note that the evidence presented at trial suggested that the victim may have had an independent basis to identify defendant. Thus, "[i]nasmuch as the identification of defendant by the victim was critical to the prosecution and there was no evidence at the suppression hearing to permit a determination whether the in-court identification had an independent source, defendant is entitled to a new trial to be preceded by a hearing as to whether there was an independent basis for the identification testimony of the [robbery victim]' " (People v Adams, 106 AD3d 1496, 1496 [4th Dept 2013]).
In light of our determination, we do not address defendant's remaining contentions.
Entered: July 6, 2018
Mark W. Bennett
Clerk of the Court