People v Pulley
2026 NY Slip Op 03569
June 5, 2026
Appellate Division, Fourth Department
Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.
This decision is uncorrected and subject to revision before publication in the Official Reports.

THE PEOPLE OF THE STATE OF NEW YORK, RESPONDENT,
v
ROBERT PULLEY, ALSO KNOWN AS ROBERT WILSON, DEFENDANT-APPELLANT. (APPEAL NO. 1.)

Supreme Court of the State of New York, Appellate Division, Fourth Judicial Department
Decided on June 5, 2026
361 KA 12-01050
Present: Lindley, J.P., Curran, Ogden, Greenwood, And Delconte, JJ.

THE ABBATOY LAW FIRM, PLLC, ROCHESTER (DAVID M. ABBATOY, JR., OF COUNSEL), FOR DEFENDANT-APPELLANT.
BRIAN P. GREEN, DISTRICT ATTORNEY, ROCHESTER (AMY N. WALENDZIAK OF COUNSEL), FOR RESPONDENT.

Appeal from a judgment of the Supreme Court, Monroe County (Daniel J. Doyle, J.), rendered April 20, 2012. The judgment convicted defendant upon a jury verdict of murder in the second degree and criminal possession of a weapon in the second degree.
[*1]
It is hereby ORDERED that the judgment so appealed from is unanimously affirmed.
Memorandum: In these consolidated appeals, defendant appeals, in appeal No. 1, from a judgment convicting him upon a jury verdict of murder in the second degree (Penal Law § 125.25 [1]) and criminal possession of a weapon in the second degree (§ 265.03 [2]). In appeal No. 2, defendant appeals from a judgment convicting him upon his plea of guilty of criminal possession of a weapon in the second degree
(§ 265.03 [3]). In appeal No. 3, defendant appeals from a judgment convicting him upon his plea of guilty of robbery in the first degree (§ 160.15 [4]) and assault in the second degree (§ 120.05 [2]).
Initially, we note that defendant does not raise any contention with respect to the judgment in appeal No. 3, and thus we dismiss the appeal therefrom (see People v Janowsky, 162 AD3d 1699, 1699 [4th Dept 2018]; People v Allen, 93 AD3d 1340, 1340-1341 [4th Dept 2012], lv denied 19 NY3d 956 [2012]).
With respect to appeal No. 1, viewing the evidence in light of the elements of the crimes as charged to the jury (see People v Danielson, 9 NY3d 342, 349 [2007]), we reject defendant's contention that the verdict is against the weight of the evidence (see generally People v Bleakley, 69 NY2d 490, 495 [1987]). While a different verdict would not have been unreasonable, we conclude that the jury did not fail to give the evidence the weight it should be accorded (see generally Bleakley, 69 NY2d at 495). Where, as here, " 'witness credibility is of paramount importance to the determination of guilt or innocence,' we must give great deference to the jury, given its opportunity to view the witnesses and observe their demeanor" (People v Savino, 239 AD3d 1452, 1453 [4th Dept 2025]), and we perceive no reason to disturb its credibility determinations (see id. at 1454; People v Tetro, 175 AD3d 1784, 1788 [4th Dept 2019]). Contrary to defendant's further contention with respect to the weight of the evidence, we conclude that "the verdict may not be revisited" based on the post-conviction affidavit of a juror who stated that she had felt pressured by other jurors to reach a verdict, inasmuch as "[a] jury verdict may only be impeached upon a showing of improper influence" (People v Kahson B., 147 AD3d 538, 540 [1st Dept 2017], lv denied 29 NY3d 1082 [2017]; see generally People v Brown, 48 NY2d 388, 393 [1979]), which was not established here.
We likewise reject defendant's contention in appeal No. 1 that his due process right to [*2]prompt prosecution was violated by the preindictment delay. In determining whether a defendant was deprived of due process, we must consider the factors set forth in People v Taranovich (37 NY2d 442 [1975]), namely "(1) the extent of the delay; (2) the reason for the delay; (3) the nature of the underlying charge; (4) whether . . . there has been an extended period of pretrial incarceration; and (5) whether . . . there is any indication that the defense has been impaired by reason of the delay" (id. at 445; see People v Johnson, 39 NY3d 92, 96 [2022]; People v Belstadt, 243 AD3d 1313, 1316 [4th Dept 2025], lv denied 45 NY3d 935 [2026]). Those factors must be reviewed "in light of the particular factors attending the specific case under scrutiny . . . , there are no clear cut answers in such an inquiry, . . . [and] no one factor or combination of the factors . . . is necessarily decisive" (Taranovich, 37 NY2d at 445). Here, although the 12½-year delay between the crimes and the indictment was substantial, the nature of the underlying charge of murder in the second degree was serious (see Belstadt, 243 AD3d at 1316), defendant was not arrested on that charge until he was indicted (see People v Rogers, 103 AD3d 1150, 1151 [4th Dept 2013], lv denied 21 NY3d 946 [2013]), the People demonstrated good cause for the delay inasmuch as they continued to investigate until they found eyewitnesses who were able and willing to identify defendant as the shooter (see People v Decker, 13 NY3d 12, 15 [2009]; People v Walton, 168 AD3d 1103, 1105 [2d Dept 2019], lv denied 33 NY3d 1036 [2019], reconsideration denied 34 NY3d 955 [2019]), and "there is no indication that the defense was significantly impaired by the delay" (Decker, 13 NY3d at 15; see People v Wagoner, 195 AD3d 1595, 1596-1597 [4th Dept 2021], lv denied 37 NY3d 1030 [2021], reconsideration denied 37 NY3d 1100 [2021], cert denied — US —, 142 S Ct 867 [2022]).
We reject defendant's contention in appeal No. 1 that Supreme Court erred in denying his objections to two of the People's peremptory challenges as discriminatory pursuant to Batson v Kentucky (476 US 79 [1986]). In order "to combat unlawful discrimination in the jury selection process . . . [t]here is a well-established three-part test that courts employ to resolve applications made pursuant to Batson" (People v Smouse, 160 AD3d 1353, 1354 [4th Dept 2018]). "At step one, the moving party bears the burden of establishing a prima facie case of discrimination in the exercise of peremptory challenges . . . Once a prima facie case of discrimination has been established, the burden shifts, at step two, to the nonmoving party to offer a facially neutral explanation for each suspect challenge . . . At the third step, the burden shifts back to the moving party . . . to prove purposeful discrimination and the trial court must determine whether the proffered reasons are pretextual" (People v Hecker, 15 NY3d 625, 634-635 [2010], cert denied 563 US 947 [2011] [internal quotation marks omitted]; see Smouse, 160 AD3d at 1354-1355). In order to satisfy their burden at step one of the Batson inquiry, a defendant must demonstrate "that the facts and circumstances of the voir dire raise an inference that the [People] excused one or more jurors for an impermissible reason" (People v Herrod, 163 AD3d 1462, 1462 [4th Dept 2018] [internal quotation marks omitted]). While "[a] pattern of strikes made by the prosecutor may give rise to an inference of discrimination . . . [a] defendant is not required to demonstrate a discriminatory pattern" in order to establish a prima facie case of discrimination (People v Boyd [appeal No. 2], 184 AD3d 1151, 1152 [4th Dept 2020]). Rather, a defendant may instead satisfy their step one burden "by demonstrating that 'members of the cognizable group were excluded while others with the same relevant characteristics were not' or that the People excluded members of the cognizable group 'who, because of their background and experience, might otherwise be expected to be favorably disposed to the prosecution' " (Herrod, 163 AD3d at 1462, quoting People v Childress, 81 NY2d 263, 267 [1993]).
Here, defendant's first Batson objection "failed to establish a prima facie case inasmuch as he offered [only] 'the kind of vague and conclusory assertions' that have been repeatedly rejected by the Court of Appeals" (Boyd, 184 AD3d at 1152) and thus, even though the court "based its reasoning [in denying the objection] on the erroneous notion that a discriminatory pattern of strikes must be shown . . . [,] because defendant failed to establish a prima facie case at step one, the court properly denied his [objection] without further inquiry" (id. at 1153). Defendant's second Batson objection was denied by the court at the third step after the People offered the facially neutral explanations for their peremptory challenge that the potential juror's son had been sentenced to a lengthy prison term for bank robbery and that the potential juror lived on the street where the shooting had occurred. The court's credibility determinations with respect to Batson objections are entitled to great deference (see People v Luciano, 10 NY3d 499, 505 [2008]; see also Hecker, 15 NY3d at 656-657), and we conclude that the court properly determined that the People offered a race-neutral explanation for the exercise of the peremptory challenge (see People v Brown, 145 AD3d 1483, 1483-1484 [4th Dept 2016], lv denied 29 NY3d [*3]1029 [2017]; People v Garcia, 143 AD3d 1283, 1284 [4th Dept 2016], lv denied 28 NY3d 1184 [2017]).
We reject defendant's contention in appeal No. 1 that the court should have precluded an in-court identification of defendant by a witness because the prosecutor did not provide a CPL 710.30 notice for that witness within 15 days after defendant's arraignment (see CPL 710.30 [1] [b]; [2]). Pursuant to that statute, a court may permit service of a notice that the People intend to introduce identification testimony from a witness at trial more than 15 days after the defendant's arraignment "[f]or good cause shown" if the defense is given a "reasonable opportunity . . . to make a suppression motion" (CPL 710.30 [2]). Here, the witness's identification procedure took place months after defendant's arraignment, and the People thereafter provided prompt notice to defendant of the identification procedure, which was served four months before suppression hearings. Under the circumstances of this case, we conclude that the People's notice of the witness's post-arraignment identification procedure "was in compliance with the spirit of [CPL 710.30] and met [the People's] continuing obligation to give prompt notice" (People v Green, 127 AD3d 1473, 1476 [3d Dept 2015], lv denied 27 NY3d 965 [2016]; see People v Johnson, 184 AD3d 1102, 1104 [4th Dept 2020], lv denied 36 NY3d 929 [2020]; see generally People v Pacquette, 25 NY3d 575, 579 [2015]).
Defendant expressly consented to the court's Sandoval compromise and thus waived his contention in appeal No. 1 that the court erred in permitting the People to cross-examine him in accordance with that compromise (see People v Spencer, 225 AD3d 1200, 1200 [4th Dept 2024], lv denied 43 NY3d 1012 [2025]; People v Wright, 214 AD3d 1327, 1328 [4th Dept 2023], lv denied 39 NY3d 1158 [2023], reconsideration denied 40 NY3d 953 [2023]).
With respect to appeal No. 2, defendant contends that County Court (Geraci, J.) erred in refusing to suppress physical evidence obtained by the police following an inventory search of his vehicle, asserting that the underlying stop was unlawful, the car was not lawfully impounded, and no inventory report was produced. We reject that contention. It is well established that the police may stop a vehicle "when there exists at least a reasonable suspicion that the driver or occupants of the vehicle have committed, are committing, or are about to commit a crime" (People v Spencer, 84 NY2d 749, 753 [1995], cert denied 516 US 905 [1995]; see People v Lopez, 149 AD3d 1545, 1547 [4th Dept 2017]), and " '[a] police officer's suspicion may be characterized as reasonable when it is based upon specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant [the] intrusion' " (People v Floyd, 158 AD3d 1146, 1147 [4th Dept 2018], lv denied 31 NY3d 1081 [2018]; see People v Taylor, 31 AD3d 1141, 1142 [4th Dept 2006]). Here, testimony at the suppression hearing established that police officers were searching for defendant because he had been identified as the shooter of the victim in appeal No. 1 and that the stop of defendant's vehicle was initiated because that vehicle was registered to defendant and observed leaving a location that defendant was known to frequent. That evidence established a reasonable suspicion that the driver had committed a crime inasmuch as it was reasonable for the officers to infer that the registered owner of the vehicle—defendant—would be driving the vehicle (see Kansas v Glover, 589 US 376, 381 [2020]; People v Zubidi, 233 AD3d 55, 59-60 [1st Dept 2024], affd — NY3d —, 2026 NY Slip Op 00964 [2026]). Furthermore, evidence and testimony at the suppression hearing established that defendant's vehicle was lawfully impounded. Specifically, upon his arrest, defendant left his vehicle parked in the middle of a narrow street; it is the written policy of the Rochester Police Department (RPD) to tow a vehicle in its control whenever, inter alia, the vehicle presents a hazard or inconvenience to the public and to conduct an inventory search of all vehicles before taking them to the impound lot; and the police officers followed the procedure set forth in the written RPD policy in towing, impounding, and conducting the inventory search of defendant's vehicle (see People v Williams, 214 AD3d 1395, 1395-1396 [4th Dept 2023], lv denied 40 NY3d 931 [2023]; People v McPherson, 213 AD3d 1261, 1263 [4th Dept 2023], lv denied 39 NY3d 1112 [2023]; see also People v Brundige, 243 AD3d 1329, 1331 [4th Dept 2025], lv denied 44 NY3d 1064 [2026]). Contrary to defendant's further contention, an inventory report was produced by the police.
Entered: June 5, 2026
Ann Dillon Flynn
Clerk of the Court